No. 3705

Second Circuit

———

BRYAN v. MAGNOLIA GAS CO. ET AL.

———

(March 24, 1930. Opinion and Decree.)

———

Bertram F. Barnette and Goff & Goff, of Arcadia, attorneys for plaintiff, appellant.

Pugh, Grimmett & Boatner, F. Simon, Harry V. Booth, of Shreveport, and Atkins & Meadows, of Homer, attorneys for defendants, appellees.

ODOM, J. J. Audie Bryan was killed in an automobile accident due to a collision between the car he was driving and another automobile, on August 22, 1928. There survived him a widow, Mrs. Idenna Bryan, and two minor children, issue of the marriage. Mrs. Bryan brought this suit for damages for herself and her children, alleging that the accident which caused the death of her husband and the father of her children was due to the gross fault and negligence of J. M. Furrh, Jr., or those for whom he was responsible, and that Furrh was an employee of the Magnolia Gas Company. The suit is for damages against both Furrh and the gas company. Plaintiff's demands were rejected by the lower court and she appealed.

The facts pertinent to the issue are as follows:

J. Audie Bryan was traveling east in a Ford car on a graveled highway twenty-five feet wide from shoulder to shoulder. An automobile belonging to defendant, Furrh, was parked on the south side of the road near the edge, and, approximately eighty-four feet farther east, there was parked near the edge on the same side of the road a truck loaded with iron piping, which truck also belonged to Furrh. This automobile and truck, being on deceased's right-hand side of the road, caused him to swerve his car to the left in order to go by them, and he got over on his extreme left-hand side of the road. Between the parked car and the truck, a side road comes into the main highway from the north side, or on deceased's left-hand side. This side road enters the highway at a point about sixty feet east of where the automobile was parked, and about twenty-four feet west of where the truck was parked. About the time deceased's car reached the point where the side road enters the highway, a man, named Lynn, employed by Furrh, one of the defendants, drove another Ford from the side road onto the highway. The two cars collided and deceased's car turned to the right, angling across the highway, the left-hand side striking the rear end of the piping on the truck, went off the road, ran about thirty-six feet across the ditch and landed. Deceased's left arm was resting in the car window and extended beyond the edge of the car. His arm struck the end of the piping and was torn practically off or, as a physician expressed it, "was traumatically amputated." He soon died, as a result of the shock and the loss of blood.

It is alleged, and the testimony shows, that the side road out of which Lynn drove his car up on the highway was a "blind" road. Along the edge of the highway on the north side, deceased's left side, there were willow bushes eight or ten feet high and weeds sufficient to completely obstruct one's view from the highway of a car coming out on the

side road, until such car was up on the embankment. Likewise, one driving a car over the side road could not see a car approaching on the highway. Plaintiff charges that it was gross negligence for Lynn to drive up on the highway, as he did, in front of the on-coming car of deceased, and that his negligence in so doing was the sole cause of the accident. On the other hand, defendants allege and contend that Lynn was guilty of no negligence and, in the alternative, that if he was, his negligence was not the cause of the collision; but, to the contrary, the collision and accident were caused by the gross negligence of deceased in leaving his side of the road and getting too close to the left-hand edge thereof, and in running at such an excessive rate of speed that he lost control of his car, which negligence, it is claimed, so contributed to the accident as to bar recovery.

Lynn is the only one who knows just what he did, just what his movements and actions were before going on the highway. The collision itself was witnessed by several persons who were going west on the road in a car, but they were quite a distance away and saw nothing but the collision. All they could say was that the cars ran together on the road in front of them; they noticed neither car until the moment they ran together. Lynn's testimony, therefore, as to the precautions he took before going on the road is uncontradicted. His story of the tragedy is as follows:

He was working for Mr. Furrh, who was a general contractor, stringing pipe along the north side of and parallel with the highway for a gas pipe line; that he was superintending the work and had his car over on that side of the road; that he had occasion to drive back to the main road over this side road; that there was a ditch parallel with and a few feet from the highway, which ditch was bridged; that after he crossed the bridge, he stopped and listened for cars, and, hearing none, he then changed into low gear and proceeded slowly up the embankment (the crown of the highway being three feet, seven inches above the level of the bridge) until his front wheels were on the edge of the road, from which position he "glanced" to see if there was anything coming, and was getting ready to pull onto the highway and turn to his right, "and that instant the new Ford came up on my right and hit me." He said further that he could see some distance up the highway to his left from where he was when his front wheels got to the edge of the road, but that he could not see so well in the other direction from which deceased's car came. If Lynn did just what he said he did, and his testimony is not contradicted on that point, it cannot be said that as a matter of law he was guilty of negligence. He says he stopped and listened before proceeding, and that he proceeded slowly and cautiously, and that the front wheels of his automobile were not more than three feet upon the highway when the collision took place.

Blashfield, in his Encyclopedia of Automobile Law, vol. 1, p. 551, states the general rule as follows:

"One driving slowly from a private driveway into the highway, his car drifting with the force of inertia, is not required to extend his observation beyond a point where vehicles moving at a lawful speed would threaten his safety. And a motorist, in driving an automobile from a private land into a highway, the view of which is considerably obstructed by a hedge, beyond which there is a comparatively short space in which to stop the

car at sight of an approaching automobile, cannot be said as a matter of law to be under any obligation to stop his car before coming out on the road, getting out of it, and going outside of the hedge on foot to look up and down the road for approaching vehicles before proceeding."

See Sherwood vs American Railway Express Company, 158 La. 43, 103 So. 436.

The very rigid "stop, look and listen" rule adhered to by our courts and by the courts of other states, and as finally stated by the United States Supreme Court in the case of Baltimore & Ohio Railroad Company vs. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A.L.R. 645, does not apply in case of a motorist approaching a highway from a side entrance and for a very good reason. Motorcars do not run on fixed rails or tracks as do trains and are lighter and more easily controlled. Railroad trains have the right of way at all crossings and intersections and, in open territory, remote from congested sections, may run at any speed consistent with the safety of their passengers. Motorcars running on main highways have the right of way over those who enter them from the side over less favored channels. But no motorist, even though he have the right of way, is absolved from using caution at all times, and the degree of caution to be observed depends upon the conditions and surroundings. The greater the danger, the greater is the degree of care to be used. Barret vs. Caddo Trans. & Whse. Co., 165 La. 1975, 116 So. 563, 58 A.L.R. 261; Buckley vs. Featherstone Garage, Inc., 11 La. App. 564, 123 So. 446.

It is the duty of the driver of a motorcar, before entering a main highway, to look and listen for approaching cars and, if his view of the highway is obstructed, he must use extreme care. But he is not required to leave his vehicle, walk to the highway, and see if anyone is approaching. He must anticipate the presence of vehicles on the highway and if he tries to cross or enter without using due care, he is negligent. Whether due care is observed in any case must be determined by the court or jury from the facts taken in connection with the surroundings. In this case, the only testimony before us shows that Lynn approached the highway slowly and cautiously, and he says that he stopped and listened while his car was at the bridge over the ditch. The only additional precaution that he could have taken would have been to get out of his car, go to the road and look. That was not necessary because when he got the front wheels of his car upon the edge of the road he could see to the left a sufficient distance to observe that no car was approaching from that direction, and a car coming from that direction would ordinarily, under the law of the road, be on the north side of the road, the side from which he was entering. His duty was mainly to guard against the approach of cars from that direction, for that was their side of the road. He did not intend or attempt to cross the road, but only to turn to the right up the highway. He had a right to assume that cars approaching from that direction would be on the opposite side of the road, or, at least, would not be on the extreme north side, as deceased's car was when the collision took place. As already stated, the parked car and the truck on deceased's right-hand side of the road made it necessary for him to swerve to the left in order to avoid a collision with them. But it was not necessary for him to drive as close to his left-hand side of the road as he did. Neither the automobile nor the truck were parked on the side of the road immediately opposite the entrance of the

side road. We leave this particular point to be discussed more in detail later.

The surroundings were such that Lynn was under the obligation of using extreme care. According to his testimony, he did that, and there is no one to dispute him. He says that he stopped and listened, proceeded slowly and cautiously.

However, if it be conceded, as counsel for plaintiff contend, that Lynn was guilty of negligence, it is unquestionably true that deceased was also negligent. Contributory negligence in cases of this kind bars recovery. But not every act of negligence on the part of a motorist can be said to be "contributory negligence" as a matter of law, and it is only contributory negligence in its legal sense which bars recovery. Collisions between motor vehicles on public highways are generally due to the negligence of someone, and frequently to the negligence of both parties. In Pepper vs. Walsworth, 6 La. App. 610, we held that plaintiff was guilty of negligence in not having his car properly equipped with a light on the rear end, but allowed him to recover due to the negligence of the other driver, because we found that defendant's negligence was the proximate cause of the collision; in other words, that whereas plaintiff was negligent, his negligence did not have in it the element of proximate cause. We there quoted the following from 28 Cyc. p. 38:

"The act or omission alleged to be negligent must always be the proximate cause of the injury in order to be actionable; and so too must the alleged contributory negligence be, in order to bar recovery, such that the injury would not have been sustained except for such negligence."

In Blashfield's, vol. 2, p. 1209, it is stated:

"As stated in a previous chapter, the law of contributory negligence is a part of the doctrine of proximate cause, and, before an illegal act or omission can be held to be contributory negligence, it must appear that there was a causal connection between such act or omission and the injury complained of. The mere collateral wrongdoing of the injured person cannot of itself defeat a right of recovery for the injury if it did not proximately contribute thereto, and, although one injured in an automobile accident may have been guilty of negligence, yet, if his negligence did not so contribute to his injury as that, but for such negligence on his part, he would not have received the injury, it will not bar recovery."

Contributory negligence is defined in 29 Cyc. p. 505, as follows:

"Contributory negligence in its legal significance is such an act · or omission on the part of plaintiff, amounting to an ordinary want of care, as concurring or cooperating with the negligent act of defendant is the proximate cause or occasion of the injury complained of."

See Words and Phrases, First, Second and Third Series, verbo "Contributory Negligence."

The defense of contributory negligence necessarily implies and assumes negligence in the other party. Assuming that Lynn was guilty of negligence, plaintiff cannot recover because deceased was also negligent, and his negligence amounted in law to contributory negligence.

The uncontradicted testimony of disinterested witnesses shows that, just before reaching the place where the two cars collided, deceased was running at approximately fifty miles an hour in a light Ford car, with his left arm resting in the window, and that he did not check his speed until the collision took place is indicated by the fact that his car struck the other one such a blow as to turn it completely around, after which deceased's car ran

diagonally across the road twenty-four feet where it struck the ends of the pipe loaded on the truck, and then proceeded some thirty-five or forty feet farther over the embankment and lodged in the brush. This testimony of the eyewitnesses and these physical facts indicate that deceased was guilty of reckless driving and did not have his car under control. The parked automobile and the truck were necessarily seen by deceased and their presence on the road, with the truck loaded with piping, should have suggested to him that there were persons in or about them who might at some moment emerge from behind either, or attempt to cross the road from the opposite direction. Such conditions would necessarily prompt an ordinarily prudent driver to check his speed and bring his car under control. If deceased had done that, the collision would not have taken place. The presence of the automobile and the truck made it necessary for him to swerve to the left, and we think it was not negligence, necessarily, for him to drive to the extreme left-hand side of the road; but it was gross negligence for him to proceed at such a reckless rate of speed as made it impossible for him to control his car. If he had reduced his speed and brought his car under control and had kept the proper lookout, he could have seen Lynn's car coming up on the highway in ample time to swerve slightly to his right and avoid a collision. He had ample space in which to do that. Lynn says the front wheels of his car were not more than three feet out in the highway when it was struck. Counsel for plaintiff argue that his car was entirely up in the road. Their argument on this point is one which, like the two-edged sword, cuts both ways. Lynn proceeded slowly and if his car had gotten entirely up in the road it should

and could have been seen by deceased in time to avoid the collision, if deceased had been looking ahead and had had his car under control. A reading of the record leaves us in no doubt that deceased was proceeding on the highway recklessly, and without any regard whatsoever for his own safety or the safety of others. His negligence was such as to constitute the proximate cause of the collision, and plaintiff therefore cannot recover.

The district judge submitted a written opinion in which he discussed all the facts in detail. He reached the conclusion that plaintiff could not recover, and in his views we concur.

The judgment is affirmed, with all costs.