

Eraste Vidrine, of New Orleans, for appellants.

Denegre, Leovy & Chaffe and J. H. Morrison, all of New Orleans, for appellee.

JANVIER, Judge.

Mrs. Carrie Williams Aschenbach received personal injuries when an automobile which she was operating was in an accident at about 4 o'clock in the afternoon of September 9, 1934, near the corner of St. Charles avenue and Soniat street.

She alleges that the accident resulted from negligence on the part of the driver of a large truck, to which was attached a trailer of the moving van type, and which truck and trailer belonged to defendant Herrin Transfer & Warehouse Company. She prays for solidary judgment in the sum of $3,000 against that company and against Norwich Union Indemnity Company, asserting that the latter was at the time the insurer of the liability of

WILLIAMS v. HERRIN TRANSFER &
WAREHOUSE CO. et al.
No. 14624.

Court of Appeal of Louisiana. Orleans.
March 12, 1934.

the former and that, therefore, the latter, by virtue of the provisions of Act No. 55 of 1930 of Louisiana, is liable directly to her for her injuries.

Defendants deny that there was any negligence attributable to the driver of the truck, but in the alternative charge that, if there was such negligence, such was not the proximate cause of the accident, which, they declare, resulted from contributory negligence on the part of plaintiff herself.

The claim for damage to the automobile, for medical expenses of Mrs. Aschenbach, damage to her clothes, and to other personal property, is not made in this suit; there being a separate suit by Mr. Aschenbach, who, as head and master of the community, seeks, in the other suit, recovery for those items of damage.

In the district court there was judgment for plaintiff in the sum of $500, and defendants have appealed.

Defendant insurance company admits that it is the liability insurance carrier of the principal defendant and that, if there is liability in the other defendant, it (the insurer) is liable directly to plaintiff. We shall therefore discuss the facts as though there were only one defendant, Herrin Transfer & Warehouse Company.

The undisputed facts are that the automobile was proceeding down St. Charles avenue very near to the neutral ground, and that the truck and trailer, which we shall hereafter refer to as "the truck," for brevity, were also being driven down the avenue in advance of the automobile, though not directly in front of it; the truck being some ten or eleven feet from the neutral ground. The automobile was being driven at a speed slightly greater than that of the truck. As Mrs. Aschenbach was about to pass the truck, she claims that she sounded the horn, though this is denied by defendants. She overtook the truck and had reached a point almost abreast of the driver's seat, when it suddenly made a slight swerve to its left as the beginning of a turn across the neutral ground at Soniat street, and then its driver, noticing Mrs. Aschenbach's car alongside it, almost as suddenly swerved back to the right and came to an abrupt stop with its front wheel some six feet or so beyond the street line of Soniat street. The automobile also came to a stop with its front end against a large post on the edge of the neutral ground and its rear extending out into the street at an angle of between 45 and 90 degrees and crushed against the forward end of the body

of the trailer. The automobile was badly damaged in the front and also sustained damage to its rear.

There is conflicting testimony on the question of whether the truck swerved into the automobile and, after striking it, forced it into the post, or whether the front end of the automobile first struck the post in such a way as to cause its rear to skid around into the trailer.

The principal charge of negligence made against the driver of the truck is that he failed to signal, or otherwise give warning of, his intention to turn to the left and cross the neutral ground; it being asserted that such a signal was especially necessary because the length of the truck and trailer together made it necessary that, before attempting to turn, the truck should first follow a path some ten feet or so from the neutral ground, or curb, thus creating a great danger, in that one approaching and attempting to pass from the rear would naturally assume that there was and would remain ample room between the truck and trailer and the neutral ground.

It is also contended that the driver should have stopped more promptly when he saw that the automobile had been forced out of the street and upon the neutral ground.

Defendant contends that the proper signal indicating an intended turn to the left was given by the driver of the truck and that Mrs. Aschenbach should have noticed this signal; that she should have realized that so long a vehicle could not make a sharp turn and therefore could not, just before turning, assume a position near the neutral ground. It is further charged that Mrs. Aschenbach was negligent, in that she attempted to pass the truck at a street corner, which, it is claimed, is contrary to the provisions of subsection (e) of section 12 of article V of the city traffic ordinance, No. 13,702 C. C. S. This subsection (e) reads as follows:

"The operator of a vehicle shall not pass at an intersection any other vehicle traveling in the same direction."

In the record we find testimony with regard to the speed of the vehicles in question, but conclude that neither was being driven at a speed which in itself was excessive.

Nor do we find that Mrs. Aschenbach was attempting a maneuver prohibited by the above-quoted portion of the traffic ordinance because the evidence shows plainly that when she overtook and commenced to pass the truck she was at least 100 feet from the intersection of Soniat street. She states: "When I started to pass him I was in the

middle of the block." Counsel for defendant cites in his brief cases in which it seems to have been held that it is negligence to pass other vehicles at street intersections and in which other courts have applied statutory provisions similar to that above quoted. The combination vehicle in this case was very long. Mrs. Aschenbach started to pass it somewhere near the middle of the block. To complete the passing might have required her to accelerate the speed of her car beyond legal limits, and the question of whether, under such circumstances, she should continue to pass, or drop back at the next street intersection, would be a very interesting one were it presented in this case; but it will be time enough to consider such a situation in some other case in which the facts make the ordinance applicable. Here Mrs. Aschenbach states that: "If he had continued the way he was going I would have continued the way I was going and would have passed him long before we got to the intersection."

That the driver of the truck gave a hand signal indicating his intention to turn is stated by himself and by his assistant, who was on the seat alongside him, but is denied by Mrs. Aschenbach and by disinterested witnesses. The body of the trailer extended beyond the body of the truck almost one foot on each side. This, of course, interfered to some extent with the view of a motorist approaching from the rear. There can be no doubt that Mrs. Aschenbach did not see his signal, if he gave it, for surely she would not have attempted to force her way between the neutral ground and so large a truck had she had reason to believe that the driver of the truck intended to turn across her path.

■ In view of the length of the vehicle of defendant and the fact that the driver's arm, even if extended, could not be easily seen, and, taking into consideration the fact that the truck could turn only if at least ten feet from the neutral ground, we conclude that defendant's driver should have taken greater precaution to make certain that no overtaking vehicle would be trapped, as Mrs. Aschenbach's automobile undoubtedly was. The truck was equipped with a rear-view mirror in which the driver, when he ultimately looked into it, plainly saw the automobile

attempting to pass. Had he looked sooner, he would not have commenced to turn to the left as he did.

■■ Plaintiff was not at fault in not anticipating that the driver intended to turn. There was ample space for her to pass, and it was only when she was almost at the cab of the truck that the slight turn which it made to the left caused her to realize that if it did turn she could not escape and that she must strike either the truck on her right, or the post on her left. We believe that the preponderance of the evidence shows that the truck actually struck Mrs. Aschenbach's car and drove it into the post, and not that her car first struck the post and then skidded into the truck, though we deem the question of no importance. If the truck did not first strike her car, at any rate its swerving caused her justified apprehension creating a sudden emergency in which she could not have been expected to act with that calm deliberation which one must exhibit on any ordinary occasion.

But had she had time to deliberate, she could have found no complete solution of her problem. She must strike either the one or the other.

■ After the accident she was taken to the Touro Infirmary, where she remained until the next afternoon. She then went to her home, but for almost sixteen days could not leave her bed. Her teeth were struck and gave her much pain for a long time. Her physician states that her sufferings were so severe that he thought there had been bones broken, but that skiagraphs were negative. She was severely bruised in many parts of her body, but, fortunately, none of her injuries was permanent.

Counsel for plaintiff, in answer to the appeal, asks that the amount awarded, $500, be increased. The record does not justify an increase. On the other hand, we are unable to say that the judge, who saw the plaintiff and who was well able to judge of the extent of her injuries, was manifestly in error in awarding her the sum which he did.

The judgment appealed from is affirmed.

Affirmed.