## STROUD v. DAVIS–LAWHEAD FUNERAL HOME et al. *
### No. 4799.

Court of Appeal of Louisiana. Second Circuit.

May 4, 1934.

Madison, Madison & Fuller, of Monroe, for appellants.

Matthew C. Redmond and Dhu Thompson, both of Monroe, for appellee.

MILLS, Judge.

The home of Ryan Earle, in Richland parish, sits back about 150 feet west of the Winnsboro-Monroe highway which runs north and south, though curving somewhat to the north of the Earle entrance. The highway is 18 feet wide, with an 18-inch grass shoulder extending to shallow ditches, and is surfaced with heavy, loose gravel. The house is connected with the road by a driveway, skirted on the north by a fence, which turns to the north at the juncture with the main road and continues along its edge. This fence, overgrown with vines, together with weeds and trees, so completely obstructs the view to the north that a traveler along the driveway

*Rehearing denied June 4, 1934.

cannot see in that direction until his eyes have reached the edge of the main road; the driveway being equally hidden from a person coming from the north along it.

At about 3 o'clock on the rainy afternoon of September 9, 1933, Dale Lawhead, member of an ordinary partnership operating under the name of Davis-Lawhead Funeral Home, after delivering a body at the Earle place, was driving the company's hearse out the driveway, intending to turn north toward Monroe. The heavy rain had settled into a steady drizzle. The hearse was proceeding in low gear at a speed of about 5 miles per hour. From the back of the driver's seat to the extreme front it measured exactly 8 feet. Lawhead drove into the main road, without sounding his horn, and at a 45-degree angle toward the north. As his eyes reached its west edge, he saw approaching, on its right-hand side, from the north, approximately 50 feet away, at from 30 to 35 miles per hour, a Ford V-8. He testified that, when he saw the Ford, the hearse extended only 3½ feet into the highway. In this he is obviously mistaken. His eyes being even with the edge of the road and about 8 feet from the front of the car, it is bound to have been at least that far in the road. This distance was somewhat increased by the angle of the car throwing the right front fender forward, and by the probability that, though he applied his brakes promptly, he did not stop instantly.

The Ford was being driven by Mrs. Wade, next to whom sat Miss Phillips, with the plaintiff on the right. On the back seat were Mrs. Minnie Fletcher and her two children. The occupants of the Ford testify that they did not see the hearse until it came into the road 15 to 25 feet ahead of them and directly in their path. They all screamed. Mrs. Wade applied the brakes at once and cut sharply to the left. The front of the car passed the hearse, but it crashed into it at about its middle when the back end skidded in the loose gravel. The Ford did not turn over, but reversed itself across the road so that its back wheels were in the east ditch. Those in the Ford agree with the estimate of Lawhead that it was making from 30 to 35 miles per hour. These facts are not materially contradicted by the testimony of several witnesses for defendant who were on the gallery of the Earle home.

Mrs. Clara Stroud, the owner of the Ford, brings this suit against the partnership; Hugh Davis and Dale Lawhead, its members; and its insurer, the American Surety Company of New York, in solido, claiming a total of $1,225, interest and costs, for her personal injuries, pain, and suffering, loss of time, damage to her business, repairs to the automobile, hauling it in, and storage.

From a judgment awarding her $348.95 against the partnership and its members jointly and Lawhead and the surety company in solido, defendants have appealed, and plaintiff answered, praying for an increase to the amount asked, and that it be made effective against all the parties in solido.

There is no proof offered to show that the funeral home was a commercial partnership.

Defendants contend that the collision was unavoidable, and, in the alternative, that it was due to the negligence of plaintiff's driver, under her supervision and control, in failing to immediately reduce the speed of the car; in applying the brakes and cutting to the left so suddenly that the car skidded; in failing to keep a proper lookout ahead and to have the car under control and the windshield wiper and brakes in proper adjustment; and, in the second alternative, that the above acts of commission and omission constitute contributory negligence.

There is no proof that plaintiff's car was defective in any particular. It was traveling at a reasonable speed. It was under no legal obligation to slow up for private driveways and had the right of way over cars entering the public highway from them. Subdivision (e), rule 11, § 3, title 2, § 3, Act No. 21 of 1932. At 30 miles per hour it was traveling 44 feet per second. The hearse was making about 8 feet per second. Confronted with the emergency of defendants' creation, plaintiff's driver had at the most about two seconds in which to act. We can find no negligence in her conduct.

The rule governing drivers entering a main road from a driveway is thus stated in section 1024 of Berry on Automobiles:

"It is the duty of one driving out of a private driveway, before entering a highway, to look for approaching vehicles, and not proceed into the highway if he sees one coming, unless, as a reasonably prudent person, he believes and has the right to believe, that he can pass in front of such vehicle in safety. The duty to look implies the duty to see what is in plain sight, unless some reasonable explanation is shown. A vehicle on a public highway has the right of way over one emerging from private grounds.

"The fact that a car is being driven from a private driveway does not give the driver of a car on the public highway with which

the driveway intersects, an absolute and unqualified right of way. Both drivers are under the duty to act reasonably."

We have already found that plaintiff's driver acted reasonably in the emergency created by the driver of the hearse. The only question remaining is whether or not Lawhead acted reasonably in driving the hearse into the road and attempting to make a left-hand turn before he was in a position to see up the road.

For support defendants rely upon this statement made by the court in Bryan v. Magnolia Gas Co. et al., 13 La. App. 52, 127 So. 124, 126: "It is the duty of the driver of a motorcar, before entering a main highway, to look and listen for approaching cars and, if his view of the highway is obstructed, he must use extreme care. But he is not required to leave his vehicle, walk to the highway, and see if any one is approaching."

The true import of a decision cannot be gathered from one expression taken from it. To get its full meaning, the whole opinion must be read and considered. Reading further in the Bryan Case, we find the court saying: "He must anticipate the presence of vehicles on the highway and if he tries to cross or enter without using due care, he is negligent. Whether due care is observed in any case must be determined by the court or jury from the facts taken in connection with the surroundings."

We think this means that the quoted expression applies only to the situation in the case in which it is used. In the Bryan Case the driver stopped, and listened. He could see for a safe distance up the road when the wheels of his car, not his eyes, reached its edge. He had driven only 3 feet into the highway, intending to make a right turn with traffic. He was struck by a car driven on its left-hand side of the road at 50 miles per hour. The court found that the collision was caused by the gross negligence of the driver of the car on the main road.

■ The true test of negligence is what a reasonably prudent person would do in the given situation, and not a rigid rule unless of statutory law.

Were we to sustain the contention of defendants, we would have to lay down the doctrine that, if the distance from the front of the hearse to his eyes had been 18 feet, the driver of the hearse in the present case would have been justified in completely blocking the main highway before he was in a position to look out for approaching traffic.

The correct rule is well expressed in Martens v. Penton, 15 La. App. 35, 130 So. 354, 359, in which the Bryan Case is cited and in which the court says: "It was the duty of plaintiff and his wife on coming out of the Baptist road from behind the house, trees, bushes, fence, and shrubbery which concealed automobiles coming on the highway from their view until they got into it, to pause in a safe place long enough to make sure by looking carefully both ways that there was no automobile coming near enough to endanger them before entering and attempting to make a left-hand turn."

■■ This opinion goes on to hold that one whose duty it is to look must do so in such a way that the purpose of looking is accomplished. This is obviously in accord with reason and fits the present case, for what did it avail for Lawhead to look after he had already blocked the road?

The judgment of the lower court is correct in fixing liability upon defendants.

■ Plaintiff complains of the rejection of her claim for loss of business, and that the $250 awarded for injury and pain and suffering is inadequate. The first item was not proven with sufficient definiteness as to amount. Plaintiff's injuries consisted of a severely and painfully bruised shoulder and left side, with some inflammation of the mammillary gland of the left breast. She was confined to her bed off and on for one week, and was under the care of a physician for an additional three weeks. An X-ray disclosed no broken bones. The treatment consisted of heat applications, taping up her side, and quieting medicines. When discharged by the doctor four weeks after the accident, her side and shoulder were still painful, but the swelling of the left breast had subsided. At the time of trial, three months after the accident, she still complained of pain in her shoulder.

In Dyer v. Warwick, 19 La. App. 354, 140 So. 254, a woman was awarded $500 for severe bruises on the left side of the chest, involving the breast, a blackened eye, brush burns, and a slightly bruised hip.

In Wirth v. Pokert et al., 19 La. App. 690, 140 So. 234, a woman was awarded a like amount for contusions of the right shoulder and chest, brush burns on elbow and knee, from which she had completely recovered in two months.

Following these two cases, we think the amount allowed in this case for similar injuries should be increased to the same amount.

Williams v. Herrin Trans. Co. (La. App.) 153 So. 313.

For the above reasons, the judgment appealed from is amended by increasing same to $598.95, and, as amended, it is affirmed.