**MILLS v. MOORE et al.**

No. 5193.

Court of Appeal of Louisiana. Second Circuit.

March 2, 1936.

Allen B. Guthrie, of Monroe, for appellants.

Clark, Parker & Davenport, of Monroe, for appellee.

DREW, Judge.

Plaintiff's Chevrolet coach and a truck owned by defendant R. L. Moore, Jr., collided on the concrete highway between the cities of Monroe and Bastrop, La. This suit was instituted to recover the amount expended in repairing injuries to the coach, an amount paid for hire of automobiles while the coach was out of service, and for alleged general depreciation in value thereof because of the collision.

The collision occurred in the daytime, in an intersection of a gravel road with said highway. The gravel road, pointing westerly, intersects the highway from the south at an angle of about 45 degrees, but does not extend beyond it. Plaintiff's car, occupied by himself and his chauffeur, was traveling at a rapid speed westerly. The truck, driven by Charlie McHenry, Moore's agent, entered the highway slowly from the gravel road. Plaintiff charges that the truck entered the highway directly in front of his automobile in a highly careless and negligent manner, without its driver stopping or looking to ascertain if any traffic was approaching from either direction and without giving any attention whatever to conditions then on the highway about him; that when his own car was approximately 25 yards from the intersection, he and his chauffeur noticed the truck approaching the highway, but assumed that it would obey the law and stop before entering thereon,

and therefore continued to drive towards the intersection, and that when he was ten or twelve yards therefrom, the truck was driven upon the concrete and undertook to gain the right side thereof by cutting diagonally across the road in front of petitioner's oncoming car; that the brakes on the coach were instantly applied, its horn blown the moment the impending collision was apparent, and its·front wheels cut sharply to the right, in an effort to avert the collision, but without avail.

The above-enumerated acts of negligence by the truck's driver are the basis of plaintiff's suit to recover.

Defendant denies that his driver was negligent in any manner, and alleges that the accident was due solely to the excessive rate of speed of plaintiff's car (averred to have been 70 miles per hour), and the highly reckless and dangerous manner in which it was then being operated; that the driver did not have proper control thereof; and ·that he and plaintiff were not keeping a proper and careful lookout. He affirmatively alleges that McHenry brought the truck to a complete stop at the intersection while he and the passengers thereon looked carefully in both directions along the highway, and, not seeing any vehicles approaching, proceeded to drive the truck onto the highway, but as plaintiff's car, which had about that time turned a curve in the road some 100 yards distant, was traveling at such a rapid speed, McHenry did not have sufficient time to completely straighten the truck out on the highway before it was run into by the coach; that the first knowledge the occupants of the truck had of the presence of the coach was when it ran into the truck and wedged itself between the guard rails and the truck. In the alternative, plaintiff's own contributory negligence, in the respects mentioned, is pleaded in bar of his recovery herein, and it is also pleaded that he had the last clear chance to avoid the accident and failed to do so. In reconvention, defendant sues to recover cost of repairing the damage done his truck by the collision.

The lower court gave plaintiff judgment against Moore and McHenry in solido for cost of repairs to his car and for amount expended for hire of transportation while his own car was being repaired. Defendants appealed.

In brief, plaintiff asks for an increase in the amount of the judgment. As the increase is not prayed for in answer to the appeal, we are powerless to alter the judgment in appellee's favor, even though error of lower court be disclosed. Code of Practice, art. 889; Hollingsworth v. Atkins, 46 La.Ann. 515, 15 So. 77; Commercial Bank v. Shanks, 129 La. 861, 56 So. 1028; Nurdin v. Bouanchaud, 152 La. 853, 94 So. 420; Graff v. Fazende, 172 La. 441, 134 So. 387.

## Opinion.

Plaintiff and· his chauffeur testified that the truck did not stop before attempting to cross the highway. Defendants' evidence is to the contrary. Plaintiff's counsel, in brief, concedes that the truck did stop. We think this is in keeping with the preponderance of the testimony on the question. Plaintiff's case, in the lower court, was, in the main, developed upon the theory that the truck did not stop before trying to cross the highway.

The truck carried a load of 3,000 pounds of loose seed cotton. The driver and two other men occupied its only seat. The load was so arranged that the driver's view to his right was to some extent obscured. He approached the highway in middle gear, going upgrade slowly, and stopped a few feet from the edge of the concrete to allow two cars, one going east and the other west, to pass. McHenry then looked to his left and observed that the road was clear, but not being able to see down the road to his right, asked the off man on the seat to do so for him. This man did as requested and announced to McHenry that the road·was clear in that direction. The truck was then slowly put in motion to cross to the opposite side of the highway, but before completing the gradual left turn necessary to do so, the collision occurred. When this happened, the truck was diagonally across the northern half of the road; its right front wheel being about one foot from the edge of the concrete and four feet from the guard rail which parallels the concrete. The rear end of the truck possibly extended slightly across the center line of the highway. The coach, its speed materially reduced, drove into the angle formed by the guard rail and the truck, and rested after ramming the truck's right front fender and running board. Its right side was jammed against the rail. All of its fenders were injured.

On account of a left-hand curve in the highway about 100 yards towards the east, cars traveling westerly cannot be seen beyond that distance from the locus of the accident. Plaintiff and his chauffeur say that as their car turned this curve they ob-

served defendant's truck moving slowly towards the highway, some 35 feet therefrom. The chauffeur states that he was about 30 yards from the truck when he realized it was not going to stop before entering the highway. In this he is in error as skid-marks, caused by application of his brakes, began 49 yards from the locus of the accident. Only one wheel left a sign on the concrete, indicating that the brakes were not all functioning efficiently. Before applying the brakes the car was traveling at a speed estimated at from 35 to ·50 miles per hour. One witness says it was making 70 miles when it passed him not 100 yards from the accident. It is safe to conclude that its speed was at least 45 miles per hour. This is a velocity of 66 feet per second. Plaintiff was hurrying to fill some political speech-making appointments in Ouachita and Jackson parishes.

We conclude from the testimony, which is not difficult to reconcile, that at the moment the truck was put in motion to cross the highway, plaintiff's car was not visible to the truck's occupants, but was in or around the curve some 100 yards away; that as the truck was engaged in making the left turn in the intersection, pointing westerly, its occupants, their backs towards the east, gave no further attention to traffic conditions in that direction, assuming, of course, that they could and would be seen by the driver of any vehicle coming from that direction in time to slow down or stop in order to avoid a collision with the truck; and that the coach, going at a speed of 45 miles per hour or more, emerged from the curve, in sight of the truck, simultaneously, or approximately so, with its first move from stop, but its driver made no serious effort to reduce its speed until about half the distance had been covered. It probably required three or four seconds for the truck to go from stop to the center of the road, while in that space of time the coach covered more than 200 feet. The record does not disclose the distance within which the coach could have been stopped when traveling at said rate of speed; but, unquestionably, this could have been done, with ordinarily efficient brakes, within 200 feet or less. Plaintiff's driver, in view of the rapid speed he was making, either delayed too long to apply his brakes, after seeing the truck in the intersection, or became confused and lost control of the car, or, if the brakes were timely applied, the car's momentum was not adequately reduced on account of their inefficiency. All of these acts of negligence relate to and were, to some extent, influenced by the excessive speed of the coach. Had the coach been steered to the south side of the road, the collision would have been averted. The three-foot shoulder ·and seven or eight feet of the· concrete were available for that purpose. One or more of these acts of negligence was the proximate cause of the collision, and bars recovery by plaintiff.

While it is true, as argued by counsel of plaintiff, that vehicles traveling the concrete highway enjoy precedence over those entering it from side roads, it is also true that when a car, after observing the law, goes into the intersection, it has a right to precedence thereto which must be respected by traffic on the highway. A driver has the legal right to assume that his preemption of the intersection will be respected by traffic going both ways. In so assuming, he is supported by uniformity of jurisprudence over the country. He is not required, to relieve himself from the imputation of negligence, to continue to look to his right for traffic. It is the duty of traffic to observe him and respect the superior right to which his position entitles him. Hamilton v. Lee et al. (La.App.) 144 So. 249, 253; Grouchy v. Globe Furniture Co., 16 La.App. 311, 134 So. 347.

In this last case, reflecting the uniform jurisprudence on the point, it was said:

"Automobile first entering intersection has right of way, and another motorist approaching at right angles is negligent in failing to respect such right." Syllabus No. 1.

"Although another driver may have right of way, motorist first entering intersection has right to proceed." Syllabus No. 2.

See, also, Laughlin v. Sullivan, 14 La. App. 490, 491, 131 So. 687.

This question is discussed at length in the Hamilton Case, supra. In the course of that opinion, the court quoted from Berry's and Huddy's Automobile Law, as follows:

"Berry on Automobiles (6th Ed.) vol. 1, § 1049, reads as follows:

" 'A driver approaching an intersection saw a machine approaching about 150 feet distant from his right. He kept on without again looking, and was almost across the intersection when he was struck by the other car. Held, that he was not contributorily negligent as a matter of law in not looking to the right again after entering the intersection.' Citing Ellis v. Olson, 139 Wash. 351, 246 P. 944.

172

"Huddy's Encyclopedia of Automobile Law (9th Ed.) vol. 3-4, p. 230, under the heading 'Side Lookouts,' reads in part as follows: 'He need not, however, look as far as his eye can reach, but only sufficiently far to enable him to discover vehicles within the limit of danger.' Citing the following ruling from Taxicab Co. v. Ottenritter, 151 Md. 525, 135 A. 587, 589: 'It was not necessary for the plaintiff to look as far as his eye could reach to his right before proceeding across the intersecting street. His duty in that respect was performed if he looked sufficiently far to his right to discover that there was no traffic approaching from that direction within a distance that would not be traversed by a vehicle driven at a speed permitted by the law. He was not required to look always to his right while crossing the street, as he had to avoid endangering travel ahead of him, or approaching from his left.'

"Again, Berry on Automobiles (6th Ed.) vol. 1, § 1045, p. 890, says:

"'If the driver who has not the right-of-way, looked when considerable distance from the crossing and was justified in the belief that he had ample time to cross in front of a machine having the right-of-way, he was not negligent, as a matter of law, in not making subsequent observations.' Citing Werner v. Yellow Cab Co., 177 Wis. 592, 188 N.W. 77."

■ Whatever else may be said about the movements of these two vehicles immediately preceding the collision, it is certain plaintiff's chauffeur observed the truck's efforts to cross the highway when over 49 yards therefrom, and prior thereto the truck was in open view to him after the curve was turned. The position of the heavily loaded truck and its movements should have impressed plaintiff and his chauffeur with the high degree of danger attending an effort to pass it at an excessive speed, and should have impelled them to a course of utmost care and caution. It was negligence on their part to have not observed these elemental rules of the road.

Bryan v. Magnolia Gas Co., 13 La.App. 52, 127 So. 124. In this case it is correctly held that:

"Automobile driver, even though having right of way, is not absolved from necessity of being cautious at all times, degree of care to be used depending on conditions and surroundings, and increasing as danger increases." (Syllabus No. 4).

■ We conclude that plaintiff's own negligence, in the respects herein discussed, caused the collision between his car and defendant's truck; and that the truck's driver was free from any negligence whatever.

Defendant is entitled to recover the amount expended by him for repairs on his truck, and for deprivation of its use for two-thirds of a day, a total of $16.50, for which he prays for judgment in reconvention.

For the reasons herein assigned, the judgment appealed from is reversed, annulled, and set aside, and there is now judgment in favor of defendant R. L. Moore, Jr., and against plaintiff, Newt V. Mills, for $16.50, with 5 per cent. per annum interest thereon from judicial demand herein until paid. It is further ordered that plaintiff pay all costs of court.