## DARICEK v. FORREST.

### No. 5347.

Court of Appeal of Louisiana. Second Circuit.

April 2, 1937.

H. W. Ayres, of Jonesboro, for appellant.

Vinson M. Mouser, of Columbia, for appellee.

HAMITER, Judge.

A collision occurred on the Hodge-Jonesboro paved highway in Jackson parish between a Chevrolet coupé, owned and driven by plaintiff, and a Ford V–8 truck operated by one H. C. Jones, an employee of defendant, H. A. Forrest.

With the view of recovering judgment for the damages sustained by his car, plaintiff brought this suit against H. A. Forrest and the United States Fidelity & Guaranty Company. This last-named defendant was made a party to the proceeding under allegations that it had insured the truck against property damage; however, upon learning that no such insurance was in existence, plaintiff abandoned his claim against that company. H. A. Forrest, therefore, is the only defendant in the case.

Negligence on the part of the truck driver is charged by plaintiff, and responsibility is sought to be fixed on defendant under the master and servant doctrine. Defendant admits that Jones was his employee and was in the discharge of his duties when the accident occurred; but the allegations of negligence are denied. In the alternative, defendant avers that plaintiff was guilty of contributory negligence and is barred from a recovery of damages.

A trial of the case on its merits resulted in a judgment rejecting plaintiff's demands. He perfected this appeal.

Between 2 and 3 o'clock on the afternoon of July 15, 1935, plaintiff, together with Henry Daricek, his brother, and Ed Rasberry, a friend, left the town of Hodge in plaintiff's coupé for the purpose of enjoying an afternoon of fishing, and drove south on the paved highway toward the town of Jonesboro. They were somewhat late in starting on their journey. All three were riding on the one seat of the vehicle. The collision with the truck occurred at a

point about 12 feet north of the north end of the highway bridge nearest to Hodge. The road in that vicinity is straight for a distance of 300 or 400 yards.

The trial judge's well-considered written opinion furnished an accurate description of the place of accident, the truck driver's activities immediately prior to and at the time of the collision, and other pertinent facts, and we quote the following from it:

"On the day of the accident and for some two months prior thereto defendant was engaged in the construction of a concrete sidewalk along the west side of and parallel with the highway from Jonesboro to Hodge. For some distance in each direction from the locus of the accident the highway is on an embankment five or six feet high. The embankment or fill for the sidewalk was made by widening the highway embankment to such a width that the center line of the concrete slab of the sidewalk would be 12 feet from the west edge of the concrete slab of the highway. The dirt necessary for this fill was hauled on trucks equipped for that purpose from the hillside several hundred yards north towards Hodge. The trucks engaged in this work would travel down the highway some distance from the loading ground to the vicinity of the fill and would then leave the pavement and travel alongside the highway embankment on the newly constructed embankment to the place to unload. After unloading they would turn to the left and ascend to the highway on a specially constructed passage or runway for that purpose and then turn north on the highway for the return trip to the loading ground. The runway referred to entered the highway a distance of 12 feet from the north end of the bridge. This bridge is 114 feet in length, is of concrete construction, with iron railings on both sides. These railings rest on iron posts one and one half inches in diameter anchored in the concrete floor of the bridge.

"H. C. Jones, an employee of defendant, drove the truck involved in the accident in question along the route outlined from the loading ground to the place near the said bridge where the dirt was being dumped and stopped and dumped his load. Before turning to the left and entering the highway on the nearby runway he looked back up the highway to the north to see if any traffic was approaching and saw a car, which unquestionably was plaintiff's, coming in his direction at a distance which he estimated to be from 200 to 300 yards. He did not look to the south at that time. Thinking that he had ample time to make his turn to the left and enter the highway and cross to the opposite side before the oncoming car from the north reached that point he made that turn and drove up the runway onto the highway. As the front end of his truck passed on to the west half of the pavement Jones for the first time looked towards the south for approaching traffic, but, at that time he did not again look to the north. He saw a car coming from the south on the opposite side of the highway about 200 feet away and not being sure that he had time to cross over to the opposite side and get his truck straightened out north ahead of that car he stopped his truck to let it pass, his truck then being partly on the pavement and partly on the west shoulder of the highway. In this position his truck was struck by plaintiff's car approaching from the north. Both vehicles, especially plaintiff's car, were badly damaged by the collision."

The car which the truck driver saw approaching from the south, after he reached the highway, was one being driven by Johnnie Templeton. While several hundred feet away and traveling at 25 or 30 miles per hour, Templeton noticed the truck ascending the runway and entering onto the pavement. He brought his car to a stop on the south end of the bridge. The collision occurred shortly thereafter.

The evidence conclusively shows that Jones, the truck driver, was grossly negligent. Traffic on the paved highway enjoyed the right of way over machines entering thereon from the private runway in question. Section 3, rule 11, subd. (e), Act No. 21 of 1932. It was the mandatory duty of Jones to give due observance to vehicles approaching on that thoroughfare and to yield to their passage if they were in such close proximity that his proceeding into the path of travel would endanger their safety. However, he failed to discharge this duty. His truck was seen by Templeton while it was on the runway, and if Jones had been sufficiently attentive and observant, he would have noticed Templeton's car in time to prevent the truck's projection onto the pavement.

The defense of contributory negligence presents a more difficult problem.

Plaintiff was aware of the fact that the embankment work from Hodge to Jonesboro had been in progress for some weeks.

His knowledge was acquired by reason of his use of the highway on previous occasions. He knew that men were working along the road and that trucks were going on and off of it. One of plaintiff's companions testified that after leaving Hodge, on the journey in question, "there were so many trucks and people working along the highway there that we couldn't run fast."

The rate of speed employed by plaintiff's car shortly before the occurrence of the collision was estimated by its occupants at 30 or 35 miles per hour. Defendant's general foreman, who was standing at a point just off and west of the shoulder of the road and approximately 125 feet north of the runway, stated that the coupé was "going fast." The Ford V-8 truck was struck on its left front wheel while it was motionless and standing at a right angle with the edge of the pavement. Its front end was skidded around by the impact a distance of 10 or 12 feet and against the west railing of the bridge, resulting in the knocking down of 4 or 5 feet thereof and a large portion of the iron pipes supporting it. The coupé, after the impact occurred, projected itself into the railing of the bridge on the east side. It stopped on the bridge a few feet from its north end. Among the new parts necessary to repair plaintiff's car after the collision were a frame assembly, a front axle, right front spring, left front spring main leaf, and front bumper complete. These physical facts, when considered in the light of the proof that plaintiff applied his brakes and slowed to some extent before he collided with the truck, are indicative of a high rate of speed on the part of plaintiff's car.

The testimony in the record is conflicting with reference to the location of the coupé when the truck entered the highway. Plaintiff states that he was only 20 feet away when he first saw the truck, and that it was then at the west edge of the pavement. He is corroborated in his statement by Ed Rasberry, who was sitting next to him. The third occupant of the car, Henry Daricek, was on the right side. He saw the truck when it was at a standstill about 2 or 3 feet off the highway and 200 or 300 feet away. When he and his companions were a distance of 40 or 50 feet from it, the truck pulled upon the pavement. At this time his brother, plaintiff herein, applied his foot brakes and blew his horn. The general foreman of defendant, who, as aforestated, was 125 feet north of the runway and a few feet west of the pavement, stated that he was looking south toward Jonesboro at the time and heard the skidding of tires on plaintiff's car to the side of and about even with him. He further stated that the coupé skidded to the right, the brakes were then released, and it cut toward the left and struck the truck about the front wheel. After the car had passed, he inspected the pavement at the location where he heard the noise, and found a single skid mark. This mark began approximately 3 feet from the western edge of the slab and stopped on the edge. Later he measured it and found its length to be 28 feet. Templeton, the driver of the car which was approaching from the south, was traveling at the rate of 25 or 30 miles per hour when he saw the truck come on, to the pavement. He was able to stop his machine before the collision occurred.

After thoroughly considering all of the evidence in the record, we are convinced, as was the trial judge, that plaintiff was negligent in the operation of his car on the occurrence of the collision. Obviously, he was not employing the reasonable and prudent speed and the proper and cautious observance of the road and surrounding conditions which were required of him by the presence of the numerous workmen and trucks, on and near the highway, engaged in the embankment work. No motorist, even though he has the right of way, is absolved from using caution at all times, and the degree of caution to be observed depends upon the conditions and surroundings. Bryan v. Magnolia Gas Co., 13 La.App. 52, 127 So. 124, 127. Under the provisions of section 3, rule 4, subd. (a), of Act No. 21 of 1932, a person operating a motor vehicle on the public highways of this state must proceed at a careful, prudent, reasonable, and proper speed, having due regard to the traffic, surface and width of the highway, the location and neighborhood, and any other conditions or circumstances then existing.

It is also our opinion that his negligence concurred with that of the truck driver and was a contributing and a proximate cause of the collision. Negligence is contributory in a legal sense when, and only when, it is a proximate cause of the injury, and if such contribution exists in the least degree there can be no recovery. Huddy's Cyclopedia of Automobile Law, vol. 3-4, § 184. Contributory negligence is

a part of the doctrine of proximate cause, and where there is a causal connection between an illegal act of the injured person and the injury complained of, no recovery is permitted. Blashfield's Cyclopedia of Automobile Law & Practice (Permanent Ed.) § 2553. If plaintiff had been driving his car at a speed in keeping with the conditions and circumstances existing at the time and in the locality in question, and had maintained a reasonable lookout and a proper control of his car, he could have avoided the collision by steering to the eastern half of the pavement which was unoccupied. This he failed to do, and it must be held that his negligence had a causal connection with the accident.

The case of Bryan v. Magnolia Gas Co., supra, decided by this court with Mr. Justice Odom, who is now a member of the Supreme Court, writing the opinion, presented a factual situation somewhat similar to the one involved herein. In that case plaintiff's husband was proceeding along a graveled public road at a speed of about 50 miles an hour when his automobile collided with another vehicle which suddenly emerged from a blind sideroad into his path. Parked on the graveled highway near its intersection with the side road, and on decedent's right, were another automobile and a truck loaded with iron pipe. The husband was killed in the collision, and his wife brought suit to recover damages. After conceding that the driver of the car emerging from the side road was guilty of negligence, we held that decedent was also negligent in the operation of his car and that his negligence was a proximate cause of the collision and barred recovery. The following is stated in the opinion of the case:

"This testimony of the eyewitnesses and these physical facts indicate that deceased was guilty of reckless driving and did not have his car under control. The parked automobile and the truck were necessarily seen by deceased and their presence on the road, with the truck loaded with piping, should have suggested to him that there were persons in or about them who might at some moment emerge from behind either, or attempt to cross the road from the opposite direction. Such conditions would necessarily prompt an ordinarily prudent driver to check his speed and bring his car under control. If deceased had done that, the collision would not have taken place. The presence of the automobile and the truck made it necessary for him to swerve to the left, and we think it was not negligence, necessarily, for him to drive to the extreme left-hand side of the road; but it was gross negligence for him to proceed at such a reckless rate of speed as made it impossible for him to control his car. If he had reduced his speed and brought his car under control and had kept the proper lookout, he could have seen Lynn's car coming up on the highway in ample time to swerve slightly to his right and avoid a collision. He had ample space in which to do that."

The often enunciated doctrine, that the driver of a vehicle proceeding on a right of way thoroughfare is entitled to assume that the operator of an automobile entering such road from a private driveway will respect his priority of approach, has no application to the facts of this case. This is so because of the conditions attending and surrounding the highway in question on the occasion of the collision.

The judgment of the trial court is correct; and it is affirmed.