No. 778

First Circuit
(Second Division)

GROUCHY v. GLOBE FURNITURE CO., LTD., INC.

(May 5, 1931. Opinion and Decree.)

J. Oliver Bouanchaud, of Baton Rouge, attorney for plaintiff, appellee.

Chas. A. Holcombe, of Baton Rouge, attorney for defendant, appellant.

MOUTON, J. Judgment was rendered in this case in favor of plaintiff against defendant company for damage suffered by her in a collision between a truck and an automobile which occurred at the intersection of St. Hypolite and North streets in the city of Baton Rouge.

North street runs east and west and St. Hypolite street north and south, thus crossing each other at right angles. At the time of the accident, the auto was running east to west and the truck northward.

Mr. Frank Grouchy, husband of plaintiff, was driving the auto; his wife sitting next to him on the front seat.

The truck was being driven by Clarence Creer, an employee of defendant company. The accident happened during the daytime.

Grouchy says that, when he entered the intersection and immediately before, he was going at a speed not exceeding twelve miles an hour. His testimony is that he entered the intersection first; that is, before the truck had reached it. At, about the time Grouchy was entering the intersection, the evidence shows that Messrs. Glack and Daigle, residents of Baton Rouge, were in a car going eastward on North street towards the intersection. It appears, and of which there is no contradiction, that as their car (Daigle was driving) reached the intersection, they slowed down and came practically to a stop to allow the Grouchy auto to negotiate the intersection, as Daigle intended to turn to his left into St. Hypolite street. These two witnesses, not related to either Mr. or Mrs. Grouchy, and in fact who were strangers to them, are certain that, when the Grouchy auto entered the intersection, the truck Creer was driving was at that time about ten feet from the south side of North street. They also estimate the speed of the Grouchy auto at about ten or twelve miles an hour when it was entering the intersection. There is no evidence to contradict the statement of Grouchy, Glack, and Daigle that the former entered the intersection first, and was then traveling at about ten or twelve miles an hour. The speed at which Grouchy was moving was certainly not excessive and showed no negligence in that respect on his part.

Grouchy was traveling on a right of way street, and, as we have before stated, entered the intersection before Creer had reached the southern limit of North street on which Grouchy was going.

The rule of law which governs cases of this character is that, when two auto-

mobiles are approaching an intersection of streets at right angle, the one entering it first has the right of way, and the other should respect that right, and failure to do so is negligence. Middleton v. Jordan, 10 La. App. 189, 120 So. 668. Even when the other auto has the right of way, the one entering the intersection first has the right to proceed. Marshall v. Freeman, 10 La. App. 12, 120 So. 414. The same doctrine is recognized in Heath v. Baudin, 11 La. App. 40, 122 So. 726.

Here the Grouchy auto had entered first, had also the right of way, and Creer should therefore have either stopped his truck or slowed down to allow Grouchy to proceed across St. Hypolite, the intersecting street.

According to the testimony of Glack and Daigle, Creer was then going at about twenty-five miles an hour, and, instead of relaxing his speed, seemed to have increased it, and, as it appeared to them, was trying to pass ahead of the Grouchy car, which was struck by the truck about the center or a little over the center of St. Hypolite street.

Creer, employee of defendant company, denies the truth of the foregoing facts to which the plaintiff and the witnesses, to whom we have referred, have testified. Obviously, the court below gave credence to plaintiff and his witnesses on the issue above discussed, one of the most important in the solution of this contest, and we find nothing in the record to authorize us to question the veracity of those witnesses.

The testimony of Glack and Daigle shows that Creer instead of having his truck under control when he approached the intersection, was in reality moving at an excessive rate of speed.

Mr. Townsend, mechanic for defendant company and testifying for it, said that Creer was driving a slow-speed truck which could not pick up a speed within half a block of more than fifteen miles an hour. The purpose of that expert testimony, we presume, was offered to show that, as the truck had just passed a block southward, it could not have been traveling at twenty-five or thirty miles an hour when it reached the intersection, as was testified to by Glack and Daigle.

Creer says, he was simply creeping or rolling along in his truck when he reached the intersection. This statement of Creer is hardly believable as it is abundantly shown that by the force of the impact the truck was thrown clean across the intersection, was actually turned over, and came to a stop on the west side of St. Hypolite street; the Grouchy auto took the opposite direction, and came to a stop at the east curbing of the same street.

Counsel for defendant argues, however, that the turning over of the truck indicates that the fast driving was to be attributable to the Grouchy car, a much lighter vehicle. Daigle and Glack, and so does Grouchy, say that, when Creer realized the collision was imminent, he swerved his truck to the left to escape the impact, and that, as it was running at an excessive speed, it lost its balance, and was for that reason turned over by the contact with the lighter car.

Let us say, however, that the truck could not have picked up a faster speed than fifteen miles an hour, as would be implied from the testimony of Mr. Townsend, Creer would have still been at fault, because he should and could have stopped the truck in time to let the Grouchy car negotiate the intersection. Taking the issue presented on this question from either angle, we must hold that Creer was at fault in thus colliding with the Grouchy auto.

The next question presented by counsel

for defendant, in a very exhaustive and able brief is that, even if Creer was at fault, Grouchy was also equally negligent; that, these two drivers being mutually at fault, plaintiff under the well-established rule governing in such contingencies cannot recover.

His contention in this respect is based on the ground that Grouchy, before entering the intersection, saw, could or should have seen the truck in time to stop his auto and avoid the collision. If the evidence justified that conclusion of fact, although Grouchy had the right of way, there would be some basis to support counsel's contention.

The testimony of Grouchy is clearly to the effect that he did not see the truck until after he had entered the intersection, and that of Mrs. Grouchy, who was riding at his right, is that she first saw the truck only when it was about running into the auto of which she was an occupant. The evidence of Grouchy is that, as he came to enter the intersection, he looked south, then north, and south a second time. He did not see the truck when he first glanced southward on St. Hypolite street, and saw it only the second time, when he again turned his vision in that direction, but that he had then entered the intersection, tried to stop after he saw the truck, but could not before he was struck.

Grouchy testifies that there is a house on the northeast corner of St. Hypolite street where it is intersected by North street, which is at the distance of eighteen feet from the curb, as shown by actual measurement. In this space, between the curb and the corner of the house, he testifies, there are two large trees, a telegraph pole, and some shrubbery "on the house." There is no evidence in the record to show that these objects were not standing at the place indicated when the accident happened, a statement which could have evidently been easily disproved if that statement by Grouchy was not true. The fact is that other witnesses who were questioned on this subject impliedly corroborated Grouchy's statement, not, however, with the particularity with which he had referred to these obstructions, which, no doubt, had the effect of interfering with his view when he cast his eyes southward down St. Hypolite street for cars or other vehicles when he approached that street to enter the intersection.

Other witnesses who testified on this question said that, as a driver enters the intersection from North street going westward, the direction Grouchy was traveling, he could, on glancing down St. Hypolite street, southward, see about thirty feet on the west side of St. Hypolite street.

Mr. Anderson, traffic officer, testifies on this subject to the effect, that it would be easier to see a car coming northward on St. Hypolite street if it were traveling on the west side than if it were going on the east side. This testimony, as the location of this corner is reflected by the evidence, seems to us to be rational, true, and convincing.

It is shown by the testimony of Creer, driver of the truck, that on approaching the intersection he was driving on the east side of St. Hypolite street, which it was proper for him to do, as that was his right side. As he was driving on that side at the time Grouchy was entering the intersection, it is easily understood, taking into account the obstructions at the northeast corner of St. Hypolite street, why Grouchy failed to see the truck. As such were the conditions with which he was confronted, it is easy to account why it was that he first saw the truck only after

he had entered the intersection, when it was too late for him to so manage his auto as to escape the collision. He was therefore not at fault in not seeing the truck as he entered the intersection or before, and cannot be held to the rule that he should have seen it, which in law is the same as when actually seeing.

There was therefore no contributory negligence on the part of Grouchy so as to justify the conclusion, as contended for by counsel for defendant company, that he was equally at fault with Creer, thus precluding plaintiff from recovery.

This brings us to the next question presented by defendant in reference to the imputation of the negligence of the driver to an occupant of a car.

Counsel for defendant contends that the negligence of the husband can be imputed to his wife, and cites Berry on Automobiles (4th Ed.) 550, in support of that contention. The rule in such cases, according to contention of counsel, if we understand it correctly, means that, if the guest or occupant of the car could or should have seen the danger in time and failed to apprise the driver, he is, in law, equally negligent with the driver, and cannot recover in case of an accident. This we understand to be the position taken by counsel. He cites in support of that argument the recent decision in Williams v. Lenfant, 15 La. App. 515, 131 So. 857, 860.

In that case the doctrine is recognized that a guest may be guilty of independent negligence. In discussing the issue therein presented, the court also recognized the rule that the guest or occupant of the car in such cases is not expected to maintain the constant care which is required of the driver. The fact is the court said there that it could imagine certain circumstances under which a guest passenger is under no obligation "at all to look out for danger." The question there, said the court, was not one of looking out for danger, but was one of the duty to warn and caution a driver about a danger which the guest sees and understands.

In this case Mrs. Grouchy testifies that she saw the truck only when it came in contact with the auto and not before. She had certainly not seen the danger, which, under the decision cited, would have made it her duty to convey it to her husband, according to the ruling of the court in the case above cited.

The general rule is that the guest, not having charge of the operation of the machine, is not required to keep a lookout for danger, but can rely upon the discharge of that duty by the driver, who is responsible for its operation, unless the guest can be charged with negligence of his own. Churchill v. Texas & Pac. Ry. Co., 151 La. 726, 92 So. 314.

In the case of Toups v. M. L. & T. Railroad Co., 4 La. App. 136, the court there held that, when it appeared that the proximate cause of the accident was the failure of both to have seen what each of them should have seen, neither occupant of the car, the husband or wife, can recover.

As we have before stated, there is no proof showing that the husband should have seen the danger in time to have avoided the collision, and it is equally certain, if not more so, that his wife, who had the right to rely on his care in operating the machine, cannot be held to the rule that she should have seen the impending danger.

Counsel for defendant refers to the fact that plaintiff was the owner of the car and controlled its operation. The proof is that she entertained a wholesome fear of collisions, and always cautioned her husband to be careful as to speed, etc., in

operating the machine. These were merely suggestions dictated by a sense of prudence on her part, and bespeak no control by her of the management of the auto. Even if she had been driving the auto, it would not be possible to hold that she was at fault in not seeing the truck as they entered the intersection for the reasons we have given in holding that her husband could not be· held to contributory negligence.

Defendant company was therefore properly held liable; the only question meriting attention is as to the amount of damages granted to plaintiff.

Mrs. Grouchy suffered an injury to her ankle of which an X-ray picture was taken as was requested by Dr. Jones, the physician who was first called upon for treatment. The picture taken showed a small fracture of one of the bones of the ankle. Her foot was put in a plaster of paris cast, where it remained, according to the testimony of Dr. Jones, during a period of about eight or ten weeks. Mrs. Grouchy says for ten weeks. She further testifies that after three months she got out of bed, then during three additional months she had to keep her foot on a chair with a pillow, and thereafter could get around on crutches, which the evidence shows she was still using at the time of the trial some ten months after the date of the collision. She says the pain, while in bed during these three months, was very severe, and that she had to live on aspirins. Such a liberal use of that sedative indicates that her sufferings must have been constant and severe.

Mrs. Grouchy testified that her ankle had not entirely recovered at the time of the trial, and that she was still suffering from the injury. She also stated it was yet impossible for her to walk without a crutch. In that regard she explained that with the weight of her body on that foot it was then hurting her.

Two physicians, Drs. McKowen and Lorio, testifying as experts for defendant company, gave the court the result of their examinations of Mrs. Grouchy's injured ankle. They said that they thought Mrs. Grouchy had entirely recovered, had the free use of her foot, and seemed to indicate by their testimony that she could, at the time of the trial, have dispensed with the crutch. All the physicians agree that pain is subjective, and is actually known only by the patient. Obviously, every one, layman or physician, knows that physical pain will result from the breaking of a bone in the foot or from a sprain. It seems, however, that no one except the injured party can testify with certainty as to its intensity or duration. Such being the case here, as in all other instances of that character, we must conclude, with due respect to the learned physicians who testified in the case, that it seems impossible for them to say that the suffering Mrs. Grouchy was experiencing in her ankle when the trial was going on was not of such a character as made indispensable the use of a crutch by her at that time. The condition of her ankle might have appeared altogether normal, but the pain concealed there was entirely invisible, and the sensitiveness of the ankle at the time of the trial caused by the weight of Mrs. Grouchy's body could have been known only by her. The medical experts, particularly Drs. Lorio and McKowen, agree that no permanent disability will result to Mrs. Grouchy from the injury. The evidence supports that conclusion, but, as she testifies that she is no longer a young person, that fact must be taken into consideration in fixing the amount of damages, as with· the advance of age nature does not

bring immediate relief from the effects of physical injuries.

The lower court gave her judgment for $2,646.40, which includes the expenses she incurred for medical treatment. We think that the sum of $1,600 will be a fair allowance, and will meet the exigencies of the case.

It is therefore ordered, adjudged, and decreed that the amount decreed below of $2,646.40 is hereby reduced to the round sum of $1,600, and as thus amended the judgment appealed from be and is hereby affirmed; appellee to pay cost of appeal, defendant to pay the other costs.