**VAN DYKE et ux. v. WAGUESPACK et al.**
**No. 2164.**

Court of Appeal of Louisiana. First Circuit.
Nov. 9, 1940.

426

Albritton & Ware, of Baton Rouge, for appellants.

Jos. A. Loret, of Baton Rouge, for appellees.

OTT, Judge.

This suit grows out of an automobile accident which occurred on May 9, 1939, at the intersection of Osceola and Seneca Streets in that part of East Baton Rouge Parish known as Istrouma. Mrs. Van Dyke was injured and sues for damages in the sum of $4,500, and her husband, Edward B. Van Dyke, joins in the suit and claims damages for himself in the sum of $159.15 on account of damage to his car and expenses incurred by him on account of injuries suffered by his wife. Edward B. Van Dyke also sues in behalf of the Commercial Standard Insurance Company for $26.50, the amount paid by this company for repairs on the Van Dyke car under a policy issued to said Van Dyke. The defendants are Willie Waguespack and his insurance carrier, American Indemnity Company.

The trial court rendered judgment in favor of Mrs. Van Dyke in the sum of $750 and in favor of Edward B. Van Dyke for himself and the Commercial Standard Insurance Company for the amounts asked for in the petition. The defendants have appealed, and Mrs. Van Dyke has answered the appeal asking that the judgment be amended by increasing same in her favor to the sum of $4,500.

Mrs. Van Dyke was driving the Van Dyke car west on Seneca Street and Waguespack was driving his car north on Osceola Street. Both of these streets were gravelled at the time of the accident and neither was designated as a right of way street. Mrs. Van Dyke alleges that while she was crossing the said intersection in a westerly direction said Waguespack, driving in a northerly direction along Osceola Street, negligently and carelessly and without keeping a proper lookout, drove his automobile into the intersection at a rate of speed of more than 35 miles per hour and ran into the car which she was driving, causing the injuries and damage for which this suit is brought.

The defendants deny that Waguespack was guilty of any negligence, but aver that the accident was caused by the negligence of Mrs. Van Dyke in driving at an excessive rate of speed across the intersec-

tion, in failing to yield the right-of-way to said Waguespack when she saw or should have seen his car enter the intersection first, and in failing to stop her car or swerve it to the right so as to avoid the accident. Defendants plead these acts of negligence on the part of Mrs. Van Dyke in the alternative as contributory negligence in case the court finds that Waguespack was guilty of any negligence.

Exceptions of no cause or right of action were filed by defendants and overruled by the court. No mention is made of these exceptions in this court and they must be considered as having been abandoned. Waguespack also filed a reconventional demand in the sum of $277.44 for damage to his car, but this demand is no longer an issue in the case.

No one was in the car with either Mrs. Van Dyke or Waguespack. The principal testimony consists of that given by these drivers of the two cars, plus some photographs of the two cars and other physical facts. Mrs. Van Dyke is corroborated by another lady, Mrs. Habard, who claims to have seen the accident from her home about a block away. Waguespack is partly corroborated in his testimony by a school boy, Dyer, who was riding his bicycle about a block away. The other testimony in the case is of such little value in arriving at a solution of the disputed facts in the case that we deem it unnecessary to comment on it in any detail.

The substance of Mrs. Van Dyke's account of the accident is that she was driving west on Seneca Street at about twenty miles per hour; that she looked to her right (north) and to her left and about the time she entered the intersection of Osceola Street, she saw the Waguespack car coming from the south (to her left) at a fast rate of speed; that she entered the intersection first; that she could not see but a short distance down Osceola Street on account of a house with shrubbery in front of it at the southeast corner of the intersection; that as she got out into the intersection, the Waguespack car hit her car on the left door and rear part of the front fender and knocked her car some fifteen or twenty feet over toward the northwest corner of the intersection where her car came to a stop in the ditch.

Mrs. Habard testified that she saw the accident from her back porch and saw both cars before they collided; that Mrs. Van Dyke was going west on Seneca Street and Waguespack was going north on Osceola Street, neither going at an excessive rate of speed, the former going between twenty and twenty five miles per hour and the latter going between twenty five and thirty miles per hour; that Mrs. Van Dyke entered the intersection first, and when she was about halfway across the street, Waguespack ran into the left side of her car; that Waguespack was looking to his left (toward the west) across a vacant lot where there was a potato patch; that she did not hear either driver blow the horn or apply the brakes; that Mrs. Van Dyke's car was knocked into the ditch on the right side of Seneca Street.

Waguespack's account of the accident is not altogether clear to us, however, we think the substance of his testimony may be summarized as follows: He was going north on Osceola Street at a speed of ten or fifteen miles per hour and when he got to the intersection he saw this other car coming from the east at a fast rate of speed; that he stopped his car after he had gotten about the middle of the intersection as he saw that he could not get across before the other car would strike him; that he got to the intersection first; that he looked toward the east before he entered the intersection, but could not see the Van Dyke car on account of the hedge to the right. At this point we are unable to follow Waguespack's testimony. At one place he says that when he saw the Van Dyke car, he was almost in the center of the intersection; at another place he says that when he entered the intersection, the Van Dyke car was about 150 feet from him, that he saw it there, and immediately thereafter he said that he saw it when he got into the intersection and that he realized he could not get over and stopped to let the other car pass as it was going at a fast rate of speed; that Mrs. Van Dyke swerved her car to the right, in the same direction that he was going, and the left fender of the Van Dyke car hung up in the right front bumper of his car and dragged both cars to the west side of the intersection.

Waguespack denies that he was looking to his left across a potato patch as he approached the intersection, but states that he was looking ahead of him as school children were riding bicycles along the road. As Waguespack states in two or three separate places that he saw this

Van Dyke car coming when he got into the intersection, we must conclude that he did not see it until he got to (and probably in) the intersection. He says that he had come to a stop or a practical stop when Mrs. Van Dyke turned in the same direction as he was going and the left front part of her car sideswiped or hung into the right front bumper of his car.

For the purpose of showing that Waguespack had stopped when the cars collided, defendants placed a school boy, Dyer, on the stand who testified that he was riding a bicycle about a block away looking in the direction of the accident and he saw dust flying under the wheels of the Waguespack car and that Waguespack was in the act of stopping when the accident occurred.

Pictures of the cars taken just after the accident show clearly that the Van Dyke car was struck on the left side, at the left door and between the rear part of the left fender and the running board on the left. This indisputable evidence convinces us of at least three important facts corroborative of Mrs. Van Dyke's version of the occurrence: First, that Waguespack ran into the left side of the Van Dyke car; second, that his car was in motion when it struck the Van Dyke car; and, third, the Van Dyke car did not run into or sideswipe the Waguespack car.

Another physical fact corroborating Mrs. Van Dyke's version of the accident is that her car continued in a westerly direction after the collision, indicating that she did not turn to her right in an effort to go in the same direction as the Waguespack car. We think that the explanation for young Dyer seeing the dust rise from the application of brakes by Waguespack just before the accident is that he made an effort to stop his car before striking the Van Dyke car.

We think the facts justify the finding that both cars reached the intersection about the same time; that neither car was going at an excessive speed; that neither driver saw the other until they were almost in the intersection; that the house and hedge at the southeast corner seriously obstructed the view of both drivers; that the collision occurred near the center of the intersection, and Mrs. Van Dyke's car was struck on the left side by the Waguespack car while both cars were in motion.

■ Under the state highway regulatory act, as well as under the general rules of the road, where neither of two intersecting streets or highways is given the right of way over the other, the vehicle approaching the intersection from the right has the right of way over a vehicle approaching the intersection from the left. Rule 11, Sec. 3 of Act 286 of 1938.

■ And the driver of an automobile who has such a right of way at an intersection has the right to assume that other motorists approaching the intersection from his left will respect his right of way and permit him to proceed across the intersection. Bogan v. Caldwell Bros. & Hart et al., La.App., 184 So. 413; Grouchy v. Globe Furniture Co., Inc., 16 La.App. 311, 134 So. 347.

■ We therefore conclude that Waguespack was negligent in failing to slow down his speed on approaching the intersection when his view was obstructed, in his failure to see Mrs. Van Dyke in time to prevent striking her car on the left side and in his failure to have his car under proper control so as to respect Mrs. Van Dyke's right of way. We think that his negligence was the proximate cause of the accident.

■ The only way that Mrs. Van Dyke could be held guilty of contributory negligence was her failure to see Waguespack in time to avoid the accident. It must be remembered that she was approaching the intersection from the right and it was her duty to look to her right (toward the north) and then toward the south. She says that she first looked to her right and then to her left; that she could not see down Osceola Street to her left because of the obstruction and it was because of this obstruction that she did not see Waguespack until about the time she was entering the intersection. But as she had a right of way over cars approaching from her left, she had a right to assume that another car approaching from that direction and reaching the intersection after or about the time she did would concede her the right to cross first. In our opinion, the situation is somewhat similar to that in the two cited cases where the drivers of cars approaching an intersection from the right were found to be free of contributory negligence. The trial judge was therefore correct in holding the defendants liable.

■ A consideration of the evidence does not justify increasing the award to

Mrs. Van Dyke. She suffered bruises and contusions over her body and a rather severe nervous shock. She states that she suffered considerable pain in her back and some days she could not get off the bed and do her housework on account of the pain. Directly after the accident, she was taken to the hospital and her left side was strapped so as to reduce the soreness. No fractures or dislocation of any bones resulted from the accident, and she has apparently recovered from the effects of the injury. We see no reason to change the award.

For the reasons assigned, the judgment is hereby affirmed at the cost of appellants.