Plaintiff is a colored man about sixty years of age, and he was injured in a collision between a car driven by Wiley Aucoin and a car owned by Mrs. Ovide Lahaye and being driven by her son, Felix Lahaye. Plaintiff was working as a cook at the Moonlight Inn, and Aucoin was a bartender at this Inn. The latter was taking plaintiff home in his car after the Inn had closed just after midnight on July 21, 1941.
Aucoin with plaintiff in his car as his guest was proceeding east on Vine Street in Opelousas, and the young man, Lahaye, was proceeding north on Union Street. Vine Street is 26.7 feet wide and Union Street is 36 feet wide and is a right of way street. Both streets are paved. The Lahaye car struck the Aucoin car on its right side near the center while the latter car was proceeding across Union Street and when it had reached or slightly passed the center of the intersection. The Aucoin car came to a stop in a yard at the northeast corner of the intersection, lying over on its left side and against a tree in this yard, facing northeast.
Plaintiff sued the defendant insurance company alone as the insurer of the Lahaye car, which was being driven at the time of the accident by young Lahaye with the permission of the assured. The suit is for damages in the sum of $4,950, and the trial court rendered judgment in favor of plaintiff for the sum of $4,900. From this judgment the defendant has appealed.
The negligence charged to young Lahaye is that he was coming north on Union Street at an unlawful rate of speed; that he failed to exercise proper precaution in approaching the intersection and failed to have his car under proper control; that he failed to accord Aucoin the right of way after the latter had pre-empted the intersection. The defendant denied any negligence on the part of young Lahaye and averred that the accident was caused solely by the negligence of Aucoin in failing to bring his car to a stop before entering Union Street as he was required to do by an ordinance of the city; in his failure to keep a proper lookout for traffic approaching on Union Street from the *Page 63 
south, and in failing to yield the right of way to young Lahaye.
In the alternative, and in case the court should find that Lahaye was guilty of any negligence which contributed to the accident, the defendant pleaded independent contributory negligence on the part of the plaintiff himself in that he was familiar with the intersection and was aware of the danger of driving into Union Street from Vine Street without stopping and ascertaining if any cars were approaching on Union Street; that he failed to pay any attention as to how Aucoin was operating his car as he approached the intersection, and failed to keep a lookout for traffic on Union Street and could have seen the Lahaye car approaching had he looked; that he failed to warn Aucoin of the danger of entering the intersection without stopping and looking; and that plaintiff was aware of Aucoin's negligence in the respects above mentioned and failed to warn him or make any protest, but intrusted his safety entirely to Aucoin, regardless of his negligence in the face of imminent danger.
The testimony of Aucoin may be summarized as follows: That he was driving east on Vine Street, and when he got to Union Street, he brought his car to a stop; that he had to shift his gear to proceed across, and he did not see any car coming from the south as he started across Union Street; that when he got into the intersection, he saw the car coming from the south and he shoved on the gas trying to make it across, but the car coming from the south hit the right side of his car broadside — near the center — and knocked his car up over the side walk and into a yard in the northeast corner of the intersection, where it came to rest on its side. He says that his car was a little past the center of the street when it was struck on the right side. Aucoin testified that he was driving 15 to 20 miles per hour as he approached the intersection, and he slowed down to a speed of 2 or 3 miles per hour as he got within 8 or 10 feet of the intersection. After he got in the intersection, he saw the car coming north on Union Street 50 or 60 feet away, and he estimated the speed of this on-coming car at 30 or 35 miles per hour.
The plaintiff who was sitting beside Aucoin in the car gave about the same testimony as the latter. He did not see the car coming from the south until they had gotten in the intersection. There was some shrubbery at the southwest corner of the intersection which obstructed the view of Aucoin and plaintiff to the south on Union Street, making it impossible to see a car coming from that direction until they were within a few feet of the intersection.
There is no question but that the Lahaye car struck the Aucoin car almost broadside on the right, and that the collision occurred near the center — or a little to the east of the center — of Union Street. The negligence of young Lahaye is so obvious that it is unnecessary to discuss that phase of the case at great length. According to his own testimony, he approached the intersection at a speed of about 25 miles per hour. He saw the Aucoin car when he was about 125 feet from it and made no effort whatever to slow down or avoid the accident. He says that he had the right of way and he was not required to stop for the other car. The damage done to the Aucoin car and the distance it was knocked by the force of the impact indicates that the Lahaye car was going at a rather high speed when it struck the side of the Aucoin car.
In addition to the testimony of plaintiff and Aucoin that they entered the intersection before Lahaye had gotten to it, the physical facts as well as the testimony of young Lahaye himself, indicate clearly that the Aucoin car was well within the intersection when Lahaye approached it at a rather high speed. The fact that the Aucoin car had gotten at least half way across Union Street and was struck on its right side is convincing proof that the Aucoin car entered the intersection first, as this car was going much slower than the Lahaye car. However, the testimony of young Lahaye and his companion Robin is practically an admission that the Aucoin car got into the intersection first. When they saw the lights of the other car as it was about to enter the intersection they were some 125 feet from it and thought the other car would stop.
In view of the fact that the Aucoin car pre-empted the intersection, the point urged that the Lahaye car was on a right of way street is of little importance. Aucoin had a right to proceed across and it was the grossest kind of negligence for young Lahaye to run into him without even making an effort to stop. *Page 64 
A motorist who first enters and is crossing a right of way street has the right to proceed across, and it is negligence for a motorist traveling on the right of way street to fail to recognize the right of the motorist first entering the intersection to proceed across. And when, as is the case here, the motorist on the right of way street runs into the side of the car proceeding across in front of him at a reasonable rate of speed, such motorist is responsible for the accident. Hutto et al. v. Arbour et al., La.App., 4 So.2d 84.
As the defendant concedes that any negligence of which Aucoin might have been guilty could not be imputed to plaintiff as his guest, it remains to be determined whether or not plaintiff was guilty of any independent negligence which was a contributing cause of the accident. From what has been said already, it is clear that the independent negligence charged to the plaintiff may be resolved into his failure to keep a proper lookout and his failure to see the approach of the Lahaye car on Union Street and his failure to warn Aucoin of the approach of this car; also his failure to warn Aucoin to stop before entering the intersection, which he knew to be dangerous and at which a stop sign was placed on the southwest corner just to the right of plaintiff as they approached the intersection.
On the question of Aucoin's failure to stop before entering the intersection, both he and the plaintiff testified, as already stated, that the car was brought virtually to a stop just before entering the intersection. The only testimony to contradict this testimony of plaintiff and Aucoin that they practically came to a stop was the rather vague and indefinite testimony of Lahaye and his companion — the latter merely stating that he does not think the Aucoin car stopped before entering the intersection, and the former stating that when he first saw the Aucoin car it was about to enter the intersection and was going about 15 miles per hour (yet he had just testified that he did not see the Aucoin car until just before the collision). The trial judge reached the conclusion that Aucoin came to a virtual stop and shifted his gear before entering the intersection, and we see no reason to disagree with his conclusion on this question of fact. There was certainly no duty on the part of plaintiff to protest to his host and demand that he come to a complete stop instead of a virtual stop before entering the intersection.
It is true that both plaintiff and Aucoin testified that they did not see the Lahaye car approaching from their right on Union Street until they had gotten into the intersection. Whether or not this failure on the part of Aucoin to see the approaching car before he entered the intersection was negligence and a proximate cause of the accident is not material, except as it might affect the alleged independent negligence of plaintiff.
Ordinarily, a guest may rely on the driver to keep a proper lookout, unless the danger is obvious, or is known to the guest, and is apparently not known to the driver. The guest cannot be expected to keep the same careful lookout at all times as the driver is required to keep, and the guest is necessarily required to intrust a great part of his safety to the driver. Blashfield, Cyclopedia of Automobile Law and Practice, Perm. Ed., Vol. 4, p. 202, § 2411 et seq.; 5 Am.Jur., Automobiles, Section 476, p. 770.
In view of the fact that the Lahaye car was some distance from the intersection when Aucoin entered it at a reasonable speed, plaintiff had a right to assume that the way was clear for Aucoin to proceed across, and it would have been presumptuous on his part to have interposed his judgment against that of the driver as to whether or not it was safe to proceed across the intersection. There was no sudden emergence of danger which plaintiff should have known that the driver was unaware of or that should have been more imminent to him than to the driver. Indeed, interference of a guest with the driving, except in some sudden emergency or unusual situation where the driver is not aware of the danger, is likely to cause more accidents than it prevents.
The case of Grouchy v. Globe Furniture Co., Ltd., 16 La.App. 311, 134 So. 347, is very similar in many respects to the present case and supports the conclusions we have reached.
Plaintiff received lacerations of his face, general body contusions, and a partial dislocation of his right hip. He also sustained a right inguinal hernia as a result of the accident. He is totally and permanently disabled from work. At the *Page 65 
time of the accident he was getting $10 per week plus two meals a day as a cook. Plaintiff asked for and was awarded $2,700 for loss of earnings, and $2,000 for pain and suffering. We think this award was fully justified. Not only is plaintiff totally and permanently disabled, but, according to the doctor who treated him, his injuries are rather painful. The medical expenses of $200 were admitted.
For the reasons assigned, the judgment appealed from is hereby affirmed at the cost of the defendant in both courts.