Mrs. Mary Evelyn Hutto, wife of Charles B. Hutto, and her minor daughter, Mary Evelyn, were driving west on Convention Street in the City of Baton Rouge in a Dodge Sedan around seven o'clock P.M. on May 31, 1937, when the car which Mrs. Hutto was driving was struck on the rear by a truck of the "wrecker type" going south on North 16th Street and driven by the defendant *West Page 86 
Arbour. The collision occurred after Mrs. Hutto had gotten about three fourths across the intersection of these two streets.
This suit is by Mrs. Hutto for damages in the sum of $13,000 on account of injuries which she claims to have sustained in the collision; by her husband, Charles B. Hutto, in his own behalf for $541.25 for damage to the car driven by his wife and for medical and other expenses incurred by him on account of injuries suffered by his wife and daughter, and on behalf of his minor daughter for personal injuries which she is alleged to have sustained in the sum of $1,000. The Fulton Fire Insurance Company joined in the suit and asked to be paid a sum up to $216.25 out of any amount awarded Charles B. Hutto for damage to his car by reason of a subrogation from him to the company to cover the payment by the latter to the former of that amount under an insurance policy for damage to the car in the collision.
The defendants against whom a judgment in solido is sought for said amounts are: G.D. Arbour, the driver of the wrecker-truck; Sidney J. Babin, the Iberville Motor Co., Inc. (hereafter called the motor company) and the Massachusetts Bonding and Insurance Company (hereafter called the insurance company). The grounds on which each of these defendants is sought to be held liable are as follows:
Arbour on the ground that he was negligent in operating the wrecker-truck in that he entered the intersection at an excessive speed, failed to have the truck under control and failed to accord Mrs. Hutto the right of way over the intersection which she entered first and had pre-empted, and failed to take the necessary precautions to keep from striking her. Babin and the motor company are sought to be held liable for the acts of Arbour on the ground that at the time of the accident he was on a mission for Babin and the motor company in picking up a burned truck to be taken to a used car parts lot operated jointly by them; and the insurance company is joined in the suit by reason of a policy issued by it to the motor company to protect the motor company against liability incurred in its business of automobile dealer or repair shop.
Arbour made no appearance and judgment went against him by default. As to the other three defendants, answers were filed and the case tried, resulting in a judgment against all four defendants in favor of Mrs. Hutto for $2,000, in favor of the daughter, Mary Evelyn for $250, and in favor of Charles B. Hutto for the sum of $536.35, with a recognition of the subrogation in favor of the said Fulton Fire Insurance Company for $216.25 out of the amount awarded Charles B. Hutto. The motor company and the insurance company have perfected a suspensive and devolutive appeal, and Babin has perfected a devolutive appeal only. Arbour has taken no appeal, and, of course, we are not concerned with the judgment rendered against him.
Various exceptions of misjoinder, improper cumulation of causes of action and vagueness were filed by the appellants in the lower court and were overruled by the court. These exceptions are not pressed in this court and must be considered as abandoned.
The motor company and the insurance company filed a joint answer in which they deny that Arbour was acting as agent or employee of the motor company, or in its behalf, at the time of the accident, but aver that he was acting as the agent of and on the business of Babin. They admit that both Arbour and Babin were employed by the motor company as mechanics, but deny that the company had any interest in or control over the operation of the used car parts lot which was owned and operated by Babin separate from his employment as a mechanic and as a separate business of his own, and that Arbour at the time of the accident was on a mission for Babin in connection with said separate business. They admit the issuance of a policy by the insurance company to the motor company, but aver that the policy only covers the liability of the motor company in the operation of its business as an automobile dealer or repair shop. They deny that the wrecker being driven by Arbour at the time of the accident belonged to the motor company, but averred that it was owned by Babin. In the alternative, and in the event it is found that the motor company is liable for the acts of Arbour, they deny negligence on the part of Arbour and aver that Mrs. Hutto was guilty of contributory negligence which contributed to the accident in driving across the intersection at an excessive speed, in failing to recognize Arbour's right of way, and in failing to take the necessary precautions before entering the intersection and in darting into the intersection directly in front of the wrecker. *West Page 87 
Babin filed a separate answer and is represented by different attorneys. In addition to admitting that he and Arbour were employed by the motor company as mechanics and denying any negligence on the part of Arbour, he made the following allegations in his answer to paragraphs four and nine of the petition which reflect his position in the matter:
"In answer to paragraph four respondent shows that prior to the 31st day of May, 1937, respondent and the Iberville Motor Company, Inc. operated a lot in the Parish of Iberville at which junk cars were dismantled, and parts resold in the name of "Babin Used Car Parts Lot" but that some time prior to May 31st, 1937, the said Iberville Motor Company, Inc. sold to respondent its interest in the junk cars on the lot for the sum of $105.00, and thereafter and on May 31st, 1937, the further and only interest of the Iberville Motor Company, Inc. under said sale was a right to dispose of their junk cars on said lot, either by sale to respondent, Sidney J. Babin, at a low price, or simply by placing the said junk cars there without any cost to the Iberville Motor Company, and a further right on the part of the Iberville Motor to receive out of said dismantled cars such parts as were necessary in the repair of the Iberville Motor Company's second hand cars, without paying anything for these parts.
"In answer to paragraph nine respondent shows that the said G.D. Arbour was a regular employee of the Iberville Motor Company, and that he was the regular driver on the wrecker truck in question, regardless of the hour of the day the wrecker was called out, and that on the day in question he left the Iberville Motor Company, Inc. with the said wrecker with the knowledge and consent of the Iberville Motor Company, about fifteen minutes or a very short time before the end of his regular working hours, and that his purpose in coming to Baton Rouge, Louisiana, was to pick up the junked truck in question with the understanding that this truck was to be returned to the lot operated by respondent; and that the said wrecker made the trip to Baton Rouge and was to return the said junked truck without any charge to respondent under the foregoing arrangement whereunder the sole and only interest of the Iberville Motor Company therein was to select out of the parts of the junked truck after it was dismantled on respondent's lot such parts as the Iberville Motor Company could use in its own business and purposes."
In determining whether or not the motor company and its insurer are liable for the alleged negligent acts of Arbour, it is of course necessary to determine whether or not at the time of the accident he was on a mission for the motor company and in furtherance of its business as an automobile dealer or repair shop, or in connection with matters incidental thereto. There is no question but that up to March, 1936, the motor company and Babin operated a junk shop lot near Babin's residence either as partners or under some arrangement for their joint benefit. In March of that year, however, Babin purchased all the used cars and parts of cars and trucks then stored on said lot, with the privilege on the part of the motor company of using without cost to it of said parts in the repair of cars in its regular business.
It is contended by plaintiff that the motor company and Babin continued the course of dealing after this agreement was made by which the motor company continued to sell Babin used cars and take parts from the lot for use in repairing its cars in much the same manner as was done before Babin purchased the used cars and parts on the lot belonging to the motor company; that the wrecker which Arbour was driving at the time of the accident belonged to the motor company and was driven by Arbour for the motor company whenever wrecker service was necessary; that the trip made by Arbour to Baton Rouge with the wrecker at the time of the accident was for the purpose of picking up a wrecked truck to be brought to this lot and dismantled, with the privilege on the part of the motor company to use any of these parts in its repair business in the same manner as it was and had been using parts from other cars from this lot, and therefore the mission of Arbour was for the joint benefit of Babin and the motor company.
The evidence shows that the wrecker which Arbour drove to Baton Rouge was built by the motor company from the chassis of an old truck taken from Babin's junk lot, and this wrecker was used by the motor company in its wrecker service and was also used at times to bring used and junked cars to Babin's lot. The motor company obtained a 1937 license for the wrecker as owner, and Arbour drove the wrecker for the motor company whenever it was *West Page 88 
necessary to pick up a wreck, and at times and as an accommodation to Babin, he would pull in a used car to the junk lot without charging Babin anything for the service.
Between the time of the agreement between Babin and the motor company in March, 1936, and the date of the accident, a rather loose course of dealing took place between the motor company and Babin with reference to the sale of used cars by the former to the latter and the use and purchase of parts from the lot by the motor company. There is no question but that the motor company continued to send many of its used or junked cars to Babin's lot and got parts therefrom more or less regularly for use in its repair business. There is a lot of evidence in the record tending to show that the motor company for several months prior to the accident charged Babin with the used cars given him and gave him credit for parts taken from the lot. Without going into the details of these various transactions, we think there were times when the motor company got parts from this lot without paying for them; that both Babin and the motor company were not very particular in keeping up with the transactions between them in this respect, each rendering service for the other in many cases as a mere accommodation.
However loosely they may have carried on their relations with reference to the operation of this junk lot, it is clear that Babin and the motor company had no partnership relationship in respect thereto, nor did the motor company participate in any of the profits derived from the junk lot. The principal advantage that the motor company obtained from the operation of this junk lot was in the convenient method afforded it of disposing of its used cars and getting parts for use in its repair shop. The vital and controlling factor is the connection the motor company had with Arbour and the mission he was on when the accident occurred.
All of the evidence shows that Babin sent Arbour to Baton Rouge to pick up the burned truck and bring it to his junk lot; that Babin gave Arbour the money to pay for the burned truck and paid Arbour for expenses in crossing the river going to and returning from Baton Rouge. Arbour did not charge for the trip as he had accommodated Babin, a fellow employee, on several occasions. It is true that Arbour left some fifteen minutes before his regular quitting time at the motor company and got permission from the shop foreman to leave and take the wrecker which was being used by the motor company to make the trip. He did not go on this trip under any orders or instructions from the motor company or any of its agents, nor did he make the trip on time paid for by the motor company. An employee of Babin working at the junk lot made the trip with Arbour to help him pick up the wreck.
Assuming that the motor company was the owner of the wrecker for the purposes of this case, the mere fact that it gave Arbour permission to use the wrecker on a mission in the interest of Babin and as an accommodation to him would not render the motor company liable for the negligent acts of Arbour on this trip, as the latter was not acting within the scope of his employment with the motor company in making this trip. The criterion by which to fix liability on the employer is not the ownership vel non of the car driven by the employee, but whether or not at the time of the accident he was acting within the scope of his employment and in the furtherance of his employer's business. Roy v. Houlihan et al., La.App., 182 So. 333; Hunt v. Chisholm, La.App., 183 So. 132.
The situation was that of one in the general service of another (Arbour in the general service of the motor company as a mechanic) being transferred, with his consent, to the service of a third person (Babin) so that he became the servant of the third person and ceased to be the servant of his general employer, in which case the general employer is not liable for the acts of the servant. For a concise statement of the law on this point, see Vol. 5 Blashfield's Cyclopedia of Automobile Law and Practice, pp. 71-74, §§ 2941 and 2942. Of course, as is stated in the last paragraph of Section 2941, "a servant may have two employers at a given time under certain circumstances, and one owning or ordinarily controlling the use of an automobile may become liable for injuries caused by the negligence of another in charge thereof, though not exclusively his servant at the time of the accident." But such a situation is not presented here.
The motor company not being liable for the acts of Arbour, its insurer is also not liable under the clear provisions of the policy, as the acts of Arbour were not in connection with the operation by the *West Page 89 
motor company of its business of automobile dealer and repair shop, nor in any matter incidental thereto or connected therewith. As to these two defendants, the judgment will have to be reversed and the suit of all plaintiffs dismissed.
The negligence of Arbour is practically conceded, and if it were not conceded, it is so obvious as to require little discussion. He approached the intersection at too fast a speed and without keeping a proper lookout and without taking the necessary precautions to keep from striking the car driven by Mrs. Hutto. She entered the intersection first at a moderate rate of speed and was almost halfway across when Arbour entered the intersection and struck the rear part of her car after she had gotten at least three fourths across. As Mrs. Hutto had entered the intersection and was proceeding across it when Arbour approached it, she had a right to proceed across regardless of which street was given the right of way either by a city ordinance or the state law. See Welsch v. Laundry, 13 La.App. 20, 127 So. 751.
Babin did not file a plea of contributory negligence against Mrs. Hutto, and as the suit will have to be dismissed as to the motor company and its insurer, it is not necessary to consider the plea of contributory negligence filed by these two defendants. A plea of contributory negligence is a special plea and must be specially pleaded by the one desiring to avail himself of it. We might state, however, in passing, that we have given consideration to the evidence bearing on the alleged contributory negligence of Mrs. Hutto and do not find that she was guilty of such contributory negligence as would bar her recovery. As Babin is responsible for the negligence of Arbour, he will have to respond for the damages caused by this negligence.
The principal injury received by Mrs. Hutto was an incomplete fracture of the lower portion of the left humerus above the external condyle and a fracture of the eighth and ninth ribs on the left side, without displacement. She was in the hospital for two weeks and remained in bed at home for about three additional weeks during which time she was regularly attended by a physician. These fractures evidently healed completely after two months or so as X-rays made after that time showed no sign of fracture. No permanent effects resulted from the injury unless it is arthritis in the left arm, but we do not think Mrs. Hutto has sufficiently connected that disease with the injuries if she suffers from it. We do not think that the injuries were sufficiently serious to justify an award of $2,000, and the amount will be reduced to $1,000 which is more in line with awards in similar injuries.
There is not sufficient proof in the record to justify any award to the daughter, Mary Evelyn Hutto. She apparently suffered minor cuts over her eye and on her cheek. The doctor who attended Mrs. Hutto on the night of the accident thought the daughter had some minor bruises, but he did not remember if he had treated her. The daughter did not even take the stand and testify as to her alleged injuries and no explanation was made for the failure to testify. We think the award in her behalf is not supported by sufficient evidence and should be disallowed.
As to the amount allowed Charles B. Hutto individually, we think this amount is fully supported by the evidence and see no reason to disturb this award nor the amount allowed under the subrogation made to the Fulton Fire Insurance Company.
For the reasons assigned, it is ordered that the judgment in favor of all plaintiffs against the Iberville Motor Company, Inc., and the Massachusetts Bonding and Insurance Company, be and the same is hereby reversed and set aside and the suit as to these two defendants is hereby dismissed; that the judgment in favor of Charles B. Hutto for and in behalf of his minor daughter, Mary Evelyn Hutto, be and the same is hereby reversed and set aside and her claim for damages is dismissed; that the judgment in favor of Mrs. Mary Evelyn Hutto against Sidney J. Babin is hereby amended so as to reduce the amount of the award from $2,000 to $1,000, and as thus reversed and amended, the judgment in all other respects is hereby affirmed. *West Page 90