44 So.2d 127 (1950)
AUCOIN
v.
HOUSTON FIRE & CASUALTY CO.
No. 3192.
Court of Appeal of Louisiana, First Circuit.
January 31, 1950.
*128 Blanchard & Blanchard, Donaldsonville, for appellant.
St. Clair Adams & Son, New Orleans (P. A. Bienvenu, New Orleans, of counsel), for appellee.
JONES, Judge ad Hoc.
The plaintiff seeks the recovery of damages to his automobile, which was being driven by his brother and which collided with a car driven by one Norman Legendre, which was insured by the defendant, Houston Fire & Casualty Company. From a judgment rejecting his demand the plaintiff has appealed.
The facts show that this accident occurred at the intersection of Canal Boulevard and East Second Street (Louisiana Highway No. 29) in the Town of Thibodeaux, Louisiana. Canal Boulevard runs in a northerly and southerly direction, and East Second Street runs in an easterly and westerly direction. The car driven by the plaintiff's brother Rudolph was proceeding in a northerly direction along Canal Boulevard and the car driven by Legendre was proceeding in a westerly direction along East Second Street. East Second Street is a main thoroughfare through the Town of Thibodeaux and is a right-of-way street. Canal Boulevard is a less-favored street, and the evidence reflects that there was a stop sign on Canal Boulevard just prior to its entrance into East Second Street. It is further shown by the testimony of Clarence Morvant, a taxi driver, and Miss Rita Legendre, who was a passenger in the taxi, that the plaintiff's car passed the taxi driven by Morvant on Canal Boulevard within a block of the intersection of Canal Boulevard and East Second Street, and at that time the plaintiff's car was being driven at a rate of speed of 25 miles per hour. These witnesses further testified that, when the plaintiff's car reached the intersection of the two streets, the driver did not slow down but continued at the same rate of speed into the intersection. In his written reasons for judgment, the district judge gave great weight to the testimony of these witnesses for the reason, as stated by him, they were "among the more reliable witnesses in the case because of their disinterest".
After the plaintiff's car had proceeded into the intersection to a point about 3 feet north of the black line which divides the said intersection, the said car and the one driven by Legendre collided, and the evidence shows that the front of Legendre's car struck the other car about the middle thereof.
It is contended by the plaintiff that Legendre was negligent in failing to give any warning of his approach to the intersection; failing to slow down for the said intersection; failing to apply his brakes and bring his car under control; failing to keep a proper lookout to see what he should have seen, namely that the driver of plaintiff's car had preempted the intersection, and operating his car at too rapid a speed under the circumstances. It is further contended that the plaintiff's brother was operating the car in a slow and careful manner, not at fault and in no way contributing to said collision.
The record reflects that Legendre's car was being operated at a rate of speed of 20 miles per hour, on a right-of-way street and adjacent to the corner of the intersection (in the direction from which the plaintiff's car was proceeding) there was a house which abutted the sidewalk and several cars were parked along Canal Boulevard. These prevented Legendre from seeing the car driven by plaintiff's brother until said car was almost in the intersection and, since plaintiff's brother continued his speed of 25 miles per hour into the intersection, it was impossible at that time for Legendre to stop or to do anything else for that matter in order to avoid the collision. Certainly, since Legendre was on a right-of-way street, it was not necessary for him to give any warning of his approach to the intersection, particularly in view of the fact that there was a stop sign on Canal Boulevard with which Legendre was familiar. Neither did any duty devolve on him to slow down at said intersection because he was traveling at a speed of only 20 miles per hour, and knowing that the stop sign was on Canal Boulevard he certainly had the right to believe that any car entering the intersection from that direction would *129 stop in compliance with the law. We, likewise, do not believe that his failure to apply his brakes, under the circumstances, could constitute negligence. However, there is testimony by Legendre that he did actually apply his brakes.
The plaintiff contends that Legendre should have applied his brakes, brought his car under control and thereby passed the plaintiff's car to the back thereof. We are of the opinion that no such duty devolved upon Legendre under the circumstances even though we are of the opinion he did apply his brakes. He was proceeding along this right-of-way street, at a lawful and reasonable rate of speed of 20 miles per hour, and he certainly had a right to believe that any car coming out of Canal Boulevard would slow down in conformity with the stop sign.
Since the plaintiff's brother was driving at a rate of speed of 25 miles per hour and did not even slow down, then he was guilty of the negligence which created the emergency that caused the accident. While it might have been true that there was room behind the car driven by the plaintiff's brother at the time of the collision for Legendre's car to have passed, yet the emergency which he created was so sudden that it would have been impossible for Legendre to have made such a maneuver.
It is further contended by plaintiff that Legendre failed to keep a proper lookout in that he failed to see that which he should have seenthe fact that the car driven by the plaintiff's brother had preempted the intersection. We are not satisfied that plaintiff's car actually preempted the intersection. Since the plaintiff's car was being driven at a rate of speed of 25 miles per hour and the Legendre car at a rate of speed of 20 miles per hour, we do not consider the fact that the accident happened 3 feet north of the black line as sufficient to determine that the plaintiff's car had preempted the intersection. Under the circumstances, the difference in speed of the respective cars could have caused plaintiff's car to have proceeded further into the intersection than the car driven by Legendre and, too, Legendre applied his brakes just prior to the collision. Anyway, preemption of an intersection does not mean the prior entry of a vehicle by a matter of a few feet or by a fraction of a second ahead of another vehicle, but it means under our jurisprudence the entry into an intersection with the opportunity of clearing the same without obstruction of the path of another vehicle under normal and reasonable conditions and circumstances. See Butler v. O'Neal, La.App., 26 So. 2d 753.
We, accordingly, are of the opinion that Legendre was guilty of no negligence in the premises and that the negligence of the driver of the plaintiff's car was the sole and proximate cause of this accident. For these reasons, the judgment of the lower court will be affirmed.
ELLIS, Judge (dissenting).
As I view the facts in this case, they show that the point of collision was as stated in the majority opinion approximately 3 feet to the north of the center line of Highway 29 and approximately 1 foot east of the center line of the east lane of Canal Boulevard in the northeast quarter of the intersection. It is shown that the east lane of Canal Boulevard which plaintiff was traveling is 23 feet wide, and the highway which Legendre was traveling is 30 feet wide. After the collision, plaintiff's car, which was traveling north, was pushed by the Legender car, which was traveling west, entirely off its northerly course in a north westerly direction against the curb of the neutral ground.
Plaintiff's car came to rest turned over on the curb of the neutral ground with its front end approximately 3 feet west of the southeast corner of the neutral ground on the north side of Highway 29 facing east, although at the time of the collision it was traveling north. This neutral ground is recessed a distance of 6 feet from the north line of Highway 29. The east lane of Canal Boulevard is 23 feet wide and the collision occurred 1 foot east of the center line of the East lane of Canal Boulevard. Thus, on a straight line from the point of impact to the front of plaintiff's car where *130 it came to rest was approximately 21½ feet. The front of Legendre's car struck the plaintiff's car at a point where the right rear fender and running board join. Legendre's car, therefore, pushed plaintiff's car diagonally in a semi-circle a distance of approximately 30 feet to 35 feet from the point of collision. I arrive at this conclusion by adding to the 21½ feet the distance from the front of the plaintiff's car to the point of impact directly in front of the right rear fender, which would be approximately 10 to 12 feet, as the car was approximately 15 or 16 feet in length. This is almost conclusive proof that the Legendre car was being driven quite a bit faster that the plaintiff's car at the time of the collision, and, also, that it was traveling at a faster rate than 20 miles per hour. It seems reasonable to conclude from this that if plaintiff's car had been traveling 25 miles per hour and the defendant's car had been traveling 20 miles per hour that the plaintiff's car would have dragged Legendre's car in a northerly direction rather than for the Legendre car to push the plaintiff's car entirely off its course and in an opposite direction a distance of approximately 30 to 35 feet. While there is no testimony as to the weight of either car, it is shown that the plaintiff's car was a two seated '38 Chevrolet with two doors, while the Legendre car was a 1948 two door sedan Chevrolet. I believe it safe to assume there was not much difference in the weight and therefore the distance which the Legendre car pushed the plaintiff's car of approximately 30 feet in front of it was due to the speed and not to any advantage given it by extra weight.
Legendre and some of the witnesss who testified on behalf of the defendant, particularly the taxicab driver and his passenger, Miss Rita Legendre, whose testimony is quoted in the majority opinion and whom the District Court stated were among the more reliable witnesses in the case because of their disinterest, testified that plaintiff's car and the Legendre car arrived at the intersection at approximately the same time. This is impossible, even if we take the speeds as stated in the majority opinion that the plaintiff's car was traveling 25 miles per hour and the Legendre car was traveling 20 miles per hour. From the point where the plaintiff entered the intersection to the point of impact was 18 feet, and from the point where Legendre entered the intersection to the point of collision was 10½ feet. In order to determine how far plaintiff's car traveled from the point where it entered the intersection to the point of the collision we must add the distance from the front end of plaintiff's car to the point of impact at the right rear fender which conservatively would be 10 feet, making an approximate distance of 28 feet. On the other hand, Legendre's car, from the point where it entered the intersection to the point of collision traveled only 10½ feet. Thus, plaintiff had traveled slightly less than three times the distance of Legendre. Therefore, if the two cars reached the respective points at which they entered the intersection at the same time, for the collision to have occurred where it did the plaintiff would have had to be traveling at a speed slightly less than three times the speed of the Legendre car. In other words, if Legendre's car was going 20 miles per hour, the plaintiff's car would have had to be traveling almost 60 miles per hour. Therefore, it is shown without a doubt that they did not enter the intersection at approximately the same time. The plaintiff entered the intersection first and at the time of the collision the front end of his car was entirely across the intersection and was on the point of entering Canal Boulevard to the North of the intersection. Thus, at the time of the collision plaintiff's car had completely cleared the south lane of the highway and this 15 feet was open and clear and Legendre, by veering approximately 3 or 3½ feet to his left, would have passed to the rear of plaintiff's car without touching it. Legendre, if we accept his speed at 20 miles per hour, which I do not believe is correct as shown by the force of his blow, would have been back from the intersection a sufficient distance to have stopped before the collision. He testified that he applied his brakes but the proof shows that he did not. No witness saw any evidence of any brakes being applied by Legendre or by *131 the plaintiff, for that matter. Legendre admitted that he did not see the plaintiff until almost simultaneously with the collision.
I further see no reason why Legendre, had he looked, could not have seen plaintiff quite a distance before he entered the intersection. It is true that there is a camphor tree shown in one of the photographs but it does not have any limbs for quite a distance from the ground and does not obstruct the view. There is a house which sits at the corner of East Canal Boulevard and the highway. It is shown that this house is 12 feet back from East Canal Boulevard and approximately 7 or 8 feet from the highway. It is also shown that there were possibly two cars parked in front of the house on the corner but I do not believe from the testimony or the photographs introduced in evidence, that the house, the camphor tree or the cars obstructed Legendre's view to such an extent that he could not have at least seen the plaintiff approaching the intersection in plenty of time to have stopped his car rather than to have run into the plaintiff. The reason Legendre did not see the plaintiff's car in ample time to honor its preemption of the intersection was that he did not look, and under his own admission he never saw the plaintiff's car until he was about to hit it which he did, head-on, as the front of the Legendre car was damaged.
I do not believe that the plaintiff entered the intersection without slowing down and I base this statement upon the testimony of Miss Rita Legendre, the passenger in the taxicab, even though she testified that the plaintiff did enter the intersection without slowing down. She testified that the plaintiff's car passed the taxicab on Canal Boulevard within a block of the intersection in which the collision occurred, and at that time the plaintiff's car was being driven at an estimated speed of about 25 miles per hour and the taxicab was traveling at approximately 20 miles per hour. Also, there is no testimony that the taxicab accelerated its speed of 20 miles per hour from the time the plaintiff's car passed it but there is testimony that the taxicab slowed down just prior to reaching the intersection in order to make the right hand turn into the highway. At the time of the collision it had reached the intersection and was preparing to make this turn to its right into the highway.
Counsel for plaintiff then asked Miss Legendre the following questions to which she gave the following answers:
"Q. Just before the collision occurred you were in the middle of the block? A. Just before it occurred we were practically on the highway getting ready to turn.
"Q. You had caught up with the Aucoin car? A. Yes.
"Q. Then it wasn't going very fast? A. I couldn't say."
Therefore, from this testimony plaintiff could easily be correct when he said that he slowed down to approximately 5 miles per hour in crossing the intersection which, if true, would completely destroy defendant's version of the accident. At least it proves that the plaintiff's car, between the point it passed the taxi and the point of collision, had slowed down to less than 20 miles per hour, for the very simple reason that the taxicab, which was proceeding at the rate of 20 miles per hour, caught up with the plaintiff's car and was at the entrance of the intersection when the collision occurred at a distance of approximately 18 feet. If the plaintiff's car was traveling 20 miles per hour and the Legendre car was traveling 20 miles per hour then, of course, they would cover the same distance in the same length of time and, therefore, if the plaintiff's car covered approximately 28 to 30 feet from the time the front of his car entered the intersection to the point of collision then at the time that plaintiff's car started to enter the intersection the Legendre car was also 28 to 30 feet from the point of collision which was approximately 10½ feet from the point where the Legendre car entered the intersection. Thus, Legendre would have been, under this state of facts, 18 to 20 feet from the intersection at the time the plaintiff's car entered it. I am satisfied, however, from the force of the blow and the distance the Legendre car pushed the plaintiff's car that Legendre was traveling at a much faster rate of speed *132 than 20 to 25 miles per hour which, of course, would place the Legendre car a greater distance back from the intersection at the time the plaintiff entered it.
Be that as it may, and accepting the speed of the two vehicles as stated in the majority opinion of 25 miles per hour for plaintiff and 20 miles per hour for Legendre, the plaintiff entered the intersection first and was 3 feet farther than halfway across when he was struck head-on by Legendre. The facts positively show that the front of his car undoubtedly was about to leave the intersection and enter East Canal Boulevard on the north side. Therefore, the front portion of this car was entirely across the intersection when it was struck. Under these facts, plaintiff, although he did not stop for the stop sign and was negligent in that respect, still had preempted the intersection, and the proximate and sole cause of the collision was the negligence of Legendre.
This case, in my opinion, comes squarely under the decisions rendered in Hutto v. Arbour, La.App., 4 So.2d 84, Phares v. Courtney et al., La.App., 27 So.2d 925, Ferris v. Quinn, La.App., 21 So.2d 106.
In the Phares v. Courtney case, supra, the Court stated [27 So.2d 926]:
"The preponderance of the evidence shows that the front part of the log truck had passed the east boundary of the intersection a few feet and was traveling on its right, or the south side of the intersection when it was struck by the front part of the Hall truck on the rear wheels of the truck tractor part of the log truck, that is to say near where the trailer was attached to the pulling part of the log truck. The collision took place in the southeast quarter of the intersection about 9 feet from the southeast corner.
* * * * * *
"Therefore, as it is clearly shown that the front part of the Hall truck struck this log truck broadside in the southeast corner of the intersection, the log truck must have entered the intersection first as the front part of that truck traveled 30 feet across St. Phillip Street, plus several more feet beyond the intersection before it was struck on its left side by the Hall truck."
In the case of Hutto v. Arbour, supra, the Court stated [4 So.2d 89]: "The negligence of Arbour is practically conceded, and if it were not conceded, it is so obvious as to require little discussion. He approached the intersection at too fast a speed and without keeping a proper lookout and without taking the necessary precautions to keep from striking the car driven by Mrs. Hutto. She entered the intersection first at a moderate rate of speed and was almost halfway across when Arbour entered the intersection and struck the rear part of her car after she had gotten at least three fourths across. As Mrs. Hutto had entered the intersection and was proceeding across it when Arbour approached it, she had a right to proceed across regardless of which street was given the right of way either by a city ordinance or the state law. See Welsch v. [Sue Wah] Laundry, 13 La.App. 20, 127 So. 751."
I think that what happened in the above cited case also happened in the present case, that is, Legendre approached the intersection at too fast a speed and without keeping a proper lookout and without taking the necessary precautions to keep from striking the car driven by plaintiff. Also, in the present case as in that case, plaintiff was more than halfway across the intersection and as he had entered the intersection and was proceeding across it when Legendre approached it, he had a right to proceed across regardless of which street was given the right of way.
In the Ferris v. Quinn case, supra, the Court stated [21 So.2d 107]:
"The facts show that at the time of the accident both cars were traveling at a moderate rate of speed. The point is made on behalf of defendant that Anniston Street, along which defendant was proceeding is a favored street, under traffic ordinances of the City of Shreveport, over Ockley Drive, which was the thoroughfare being used by plaintiff. However, it is well established that if plaintiff first entered and pre-empted the intersection, defendant *133 thereby lost the benefits granted under such a municipal statute, and responsibility thereupon devolved upon him to take such precautions as might be necessary to avoid a collision with the pre-empting vehicle. [2] Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed. § 991, et seq; Hutto v. Arbour, La.App., 4 So.2d 84; Gardiner v. Travelers Indemnity Company, La.App., 11 So.2d 61.
"We think there is no question from the testimony developed on trial of the case that Miss Ferris, the plaintiff, entered the intersection at a speed of approximately 20 miles per hour, and had negotiated almost half of the distance across such intersection before being struck by defendant's car, which was traveling at aproximately the same rate of speed. * * *"
The facts in the present case, in my opinion, are more in favor of the plaintiff than were the facts in the above case, for in the Ferris case the plaintiff had not negotiated half the distance across such intersection whereas in the present case the plaintiff had negotiated more than half the distance across the intersection.
The majority opinion relies upon the case of Butler v. O'Neal, La.App., 26 So. 2d 753 and states the doctrine laid down therein that "preemption of an intersection does not mean the prior entry of a vehicle by a matter of a few feet or by a fraction of a second ahead of another vehicle, but it means under our jurisprudence the entry into an intersection with the opportunity of clearing the same without obstruction of the path of another vehicle under normal and reasonable conditions and circumstances."
In Butler v. O'Neal, supra, the court found, as a matter of fact, that neither one was traveling at an excessive rate of speed "since both came to a complete stop within, at most, a car length of the point of impact." [26 So.2d 755.] In the present case, the Legendre car was traveling at an excessive rate of speed or, at least, at a materially greater speed than the plaintiff's car for it pushed plaintiff's car completely around a distance of approximately 30 feet from the point of impact.
The Court also found that "defendant's claim that he pre-empted the intersection is not substantiated. The point of the impact and the location of the cars immediately after the collision negatives this claim. The facts indicate that the two cars must have entered the intersection at approximately the same time." The Court then proceeds to lay down the doctrine as stated in the majority opinion.
The doctrine that the pre-emption of an intersection does not mean the prior entry of a vehicle simply by a matter of a few feet or, in relation to the time element, by the fraction of a second ahead of another vehicle must, therefore, be taken in connection with the facts of this case which are to the effect that the vehicles entered the intersection at approximately the same time. In the present case there can be no question of a doubt that the plaintiff's car entered the intersection first and by a matter of a substantial number of feet and more than a fraction of a second as meant by the court in the case of Butler v. O'Neal, supra.
The majority opinion does not state that the cars involved in this collision entered the intersection at the same time but implies that they did when it says, "Under the circumstances, the difference in speed of the respective cars could have caused plaintiff's car to have proceeded further into the intersection than the car driven by Legendre and, too, Legendre applied his brakes just prior to the collision." As I have attempted to heretofore show from my appreciation of the facts, the difference in speed of the respective cars did not cause the plaintiff's car at the time of the collision to have proceeded 28 to 30 feet while the Legendre car was proceeding only 10½ feet but was entirely due to the fact that the Legendre car was quite a substantial distance from the intersection at the time the plaintiff's car entered it. Also, I do not believe the testimony of Legendre that he applied his brakes for he is alone in this statement, not corroborated by any other witness or physical facts such as skid marks, and no one heard the application of any brakes, and, further, in view of his own testimony that he did not see the plaintiff's *134 car until practically the moment of impact and struck it head-on, without even swerving, and in view of the fact that he could have seen the plaintiff's car when he was quite a distance from the intersection had he looked.
For these reasons I am of the opinion that the plaintiff is entitled to a judgment for the damages to his car which were duly proven on the trial of the case, as the driver of plaintiff's car had preempted the intersection, and Legendre was negligent in driving at an excessive rate of speed and not keeping a proper lookout and failing to honor the preemption of the intersection by plaintiff's car by slowing down and allowing him to proceed across as he had a right to do. I, therefore, respectfully dissent.