LOTTINGER, Judge.
This is a suit for property damage which was disposed of by the trial judge as follows :
“The collision in this case took place at the intersection of St. Philip and West Fifth Streets in the City of Thibodaux. St. Philip Street runs generally north-south, and West Fifth Street generally east-west, St. Philip being a one-way street running south, and West Fifth being a one-way street running east. West Fifth Street is a right-of-way street with no traffic control signs except those indicating one-way traffic, while St. Philip Street is properly posted with signs directing traffic approaching West Fifth Street to yield the right-of-way. Both Streets are paved with concrete. Traveling speed in the area is 25 miles per hour.
“According to the hricontradicted testimony of Marcel Romagosa, an adjuster with Employers Liability Insurance Company, St. Philip and West Fifth Streets measure widths of about 25 feet from curb to curb. There is a house at the corner of the said streets that is 12 feet from the curb on the north side of West Fifth Street and 15 feet from the curb on the west side of St. Philip Street. Focus Street is parallel to, and west of, and one block from, St. Philip Street; the said Focus Street being situated on the north side of West Fifth Street, where it ends.
“Mr. Romagosa estimates the distance from St. Philip. Street to Fcteus Street to be ‘about 125 to’ 130 feet’. He bases his estimate upon these facts; that there are four parking ’meters spaced about 20 feet apart, ‘then there is about another 20 feet from the last parking meter to St. ’. Philip Street’, making a total distance of about 100-feet ‘from St. Philip Street to the nearest entrance to Drexler’s wash rack’, the area of which is about 25 or 30 feet wide; thus making up the total estimated distance of about 125 to 130 feet between St. Philip and Focus Streets.
“The defendant Landry’s car was moving south on St. Philip Street, and the plaintiff Faucheaux’s car was moving east on West Fifth Street at the time of the collision, which occurred during the afternoon, when the weather was dry.
“According to Deputy Duet, who investigated the accident, the impact ’took place on the south side of West'Fifth Street and ‘just about in the center of St. Philip Street’. He. testified that the car ‘that was on West Fifth Street’ left skid marks ‘between 20 and 50 feet’ on West Fifth Street ‘leading up to the point of impact’. ■, After the impact the Landry car came to rest in’a position facing South-east’ toward the *486 corner. The right front of the Landry car and left front of the Faucheaux car were damaged.
“Landry testified that as he approached West Fifth Street, he came almost to a stop and put his car in second gear, that he looked to his right and saw a car approaching from a point at about Drexler’s car rack, and that he estimated that he had ample time to cross the street. He estimated Drexler’s car rack to be about 180 to 200 feet away from St. Philip Street, which is about twice the distance calculated by Romagosa. He stated that he slowed down to a speed of about 5 or 6 miles an hour. He stated that the front of his car was over the center line in the street when it was struck, about 5 feet from what he described as the other side of West Fifth Street, that is, about S feet from the South side of West Fifth Street.
“If West Fifth Street was 25 feet wide from curb to curb as was testified, and Landry’s car had advanced to a point 5 feet from the south side of West •Fifth Street, then the Landry car had advanced a distance of 20 feet from the north side of West Fifth Street, assuming that the front end of his car had reached the north side of West Fifth Street at the time that he ‘almost came to a stop’ in heeding the warning sign to yield the right-of-way. If he had slowed down to a speed of 5 or 6 mph, as he says he did, then he was traveling at a speed of 7 or 8 feet per second.
“At that point, Landry saw the car on West Fifth Street in the vicinity of Drexler’s car rack, approximately 100 feet away. It is not likely that the driver of the car on West Fifth Street would have become aware of the Landry car on St. Philip Street until the latter actually entered West Fifth Street; and it is unlikely that the driver of the Faucheaux car became apprehensive of danger ahead until the Landry car advanced a sufficient distance to clearly indicate the driver’s intention. We believe it is safe to assume that the driver of the Faucheaux car became apprehensive at about the time he saw about three-fourths of the Landry car extending into West Fifth Street, which is about the time the Landry car approached the center line of West Fifth Street.
“On the basis of Landry’s testimony that he had slowed down to a speed of 5 or 6 mph, (a speed of 7 or 8 feet a second), the Landry car must have traveled about li/£ seconds to the point mentioned. If the Faucheaux car was traveling at the speed of 25 mph (36.5 feet per second) on West Fifth Street, then it traveled about 55 feet easterly from its position opposite the Drexler car rack, where it was first seen by Landry. At that moment when the driver became fully apprehensive of danger, the Faucheaux car was about 50 feet from the point of impact, and the driver reacted to what he saw. At the speed of 25 mph, reaction distance is 27.5 feet, with the result that the Fau-cheaux car was about 23 feet from the point of impact when braking became effective, and the car skidded to the point of impact. The testimony shows that Landry continued across West Fifth Street and after the lapse of about a second, the impact took place.
“It seems to- us to be clearly evident that if the Faucheaux car was about 100 feet from the intersection when Landry first saw it, according to his own testimony, then there was insufficient time to make a safe crossing; and Landry’s attempt under such circumstances was negligence, which we hold to be the proximate cause of the accident. If the Faucheaux car was moving at a greater rate of speed, then there is all the more reason why Landry should not have attempted to cross, and *487 he was all the more negligent in trying to do so.
“That the Faucheaux car must not have been traveling at an excessive rate of speed is confirmed by the fact that the front end of the Landry car was pushed only a short distance by the impact, which circumstance impresses us as confirming and substantiating the testimony of Faucheaux and his passenger Smith that they were traveling at a speed of about 25 or 30 mph.”
Counsel’s for appellant first assignment of error is the alleged failure of plaintiff to prove ownership of the vehicle. There is no merit to this whatever in view of the following uncontroverted testimony given by plaintiff:
“Q. You are Mr. Ernest Faucheaux ? A. Yes, the owner of the car.”
Counsel for appellant, on the question of negligence malees much of the fact that the trial judge first concluded that Focus Street is 125 to 130 feet from St. Philip Street and then reduced it to 100 feet. Tfiat is not correct. The defendant testified that he first saw the plaintiff’s vehicle opposite Drexler’s wash rack and the Lower Court was fixing the distance from the nearest entrance of Drexler’s wash rack to St. Philip Street. According to the testimony of Mr. Romagosa who measured the distance, there are four parking meters spaced out from St. Philip St. to ■ the nearest side of the wash rack at Drexler’s. He estimated the parking meters to be about twenty feet apart and then - another twenty feet from the last parking meter to St. Philip Street, making a total of 100 feet. Mr. Romagosa further estimated the width of the Drexler area at about 25 to 30 f@!et. The conclusions of the trial judge with respect to negligence are fully supported by the record.
Finally, it is urged that the appellant had pre-empted the intersection. This is clearly not the case. See Aucoin v. Houston Fire & Casualty Co., La.App., 44 So.2d 127-129, wherein it was held that:
“ * * * Anyway, preemption of an intersection does not mean the prior entry of a vehicle by a matter of a few feet or by, a fraction of a second ahead of another vehicle, but it means under our jurisprudence the entry into an intersection with the opportunity of clearing the same without obstruction of the path of another vehicle under normal and reasonable conditions and circumstances. See Butler v. O’Neal, La.App. 26 So.2d 753.”
There being no manifest error in the judgment appealed from the same is affirmed.
Judgment affirmed.